Slip Op. No. 21-115

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| WORLDWIDE DOOR COMPONENTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE AND ENDURA PRODUCTS, INC., <br><br> Defendant-Intervenors | Before:  Timothy C. Stanceu, Judge <br><br> Court No. 19-00012 |

## OPINION AND ORDER

[Remanding for reconsideration an agency decision, issued in response to court order, interpreting the scope of antidumping and countervailing duty orders on aluminum extrusions]

Dated: September 14, 2021

*John M. Foote*, Kelley Drye & Warren LLP, of Washington, DC, for plaintiff.

*Brian M. Boynton*, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, of New York, New York, for defendant.  With him on the brief were *Jeanne E. Davidson*, Director; *Aimee Lee*, Assistant Director; and *Tara K. Hogan*, Assistant Director.  Of counsel on the brief was *Nikki Kalbing*, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

*Robert E. DeFrancesco, III*, Wiley Rein, LLP, of Washington, D.C., for defendant-intervenors.  With him on the brief was *Alan H. Price* and *Elizabeth S. Lee*.

Stanceu, Judge: Plaintiff Worldwide Door Components, Inc. ("Worldwide")

brought this action to contest a decision (the "Scope Ruling") by the International Trade

Administration, U.S. Department of Commerce ("Commerce" or the "Department")

that Worldwide's imported products, "door thresholds" containing aluminum

extrusions, are within the scope of antidumping and countervailing duty orders on

aluminum extrusions from the People's Republic of China (the "Orders").

Before the court is the decision Commerce submitted in response to the court's

opinion and order in *Worldwide Door Components, Inc. v. United States*, 44 CIT __, 466 F.

Supp. 3d 1370 (2020) ("*Worldwide I*").  In *Worldwide I*, the court remanded the contested

scope ruling to Commerce for reconsideration.

The court again issues a remand order.  The court holds that the Department's

new decision impermissibly relies on a factual finding or inference pertaining to

Worldwide's door thresholds that is contradicted by certain evidence on the record and

unsupported by any specific evidence that Commerce cited.  The court directs

Commerce to reconsider the impermissible finding or inference and then determine

anew whether Worldwide's door thresholds qualify for a specific exclusion (the

"finished merchandise exclusion") set forth in the Orders.

## I. BACKGROUND

Background on this litigation is presented in the court's previous opinion and summarized and supplemented herein. *See Worldwide I*, 44 CIT at __, 466 F. Supp. 3d. at 1372–73.

The decision contested in this litigation is *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Rulings on Worldwide Door Components Inc., MJB Wood Group Inc., and Columbia Aluminum Products Door Thresholds* (Int'l Trade Admin. Dec. 19, 2018) (AD Rem. P.R. Doc. 36; CVD Rem. P.R. Doc. 37) ("*Scope Ruling*").[1]

Commerce issued the antidumping duty and countervailing duty orders pertinent to this litigation (the "Orders") in May 2011. *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").

---

[1] All citations to documents from the administrative record are to public documents. References cited as "P.R. Doc. __" are to documents on the original agency record; references cited as "Rem. P.R. Doc. __" are to documents placed on the record during the Department's redetermination proceeding.

Worldwide submitted a "Scope Ruling Request" to Commerce on August 3, 2017, describing eighteen "base models" of door thresholds. *Letter from Baker & McKenzie LLP to Sec'y of Commerce re: Request for a Scope Ruling Finding that Certain Fully Assembled Door Thresholds from the People's Republic of China are not Subject to the Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China* (P.R. Doc. 1) (Aug. 3, 2017) ("*Scope Ruling Request*"). During the scope ruling proceeding, Worldwide submitted additional information in responses to questionnaires from Commerce. *Letter from Baker & McKenzie LLP to Sec'y of Commerce re: Response to Supplemental Questionnaire on Scope Ruling Request for Worldwide Door Thresholds* (P.R. Doc. 10) (Nov. 7, 2017); *Response from Baker & McKenzie LLP to Sec'y of Commerce re: Response to Second Supplemental Questionnaire on Scope Ruling Request for Worldwide Door Thresholds* (P.R. Doc. 18) (Feb. 20, 2018); *Letter from Baker & McKenzie LLP to Sec'y of Commerce re: Response to Third Supplemental Questionnaire on Scope Ruling Request for Worldwide Door Thresholds* (P.R. Doc. 23) (June 18, 2018).

The Scope Ruling Request stated that each of the 18 base models "may be imported in various lengths, colors and finishes." *Scope Ruling Request* 2. It added that these products "contain, in addition to aluminum extrusions, non-aluminum extrusion components such as synthetic plastic polymers (e.g., polyvinyl chloride ('PVC'), polyethylene, polyurethane, polypropylene, and thermoplastic elastomer), wood and

stainless steel." *Id.* at 2–3. It also stated that "all contain some form of PVC, and most contain other elements, such as steel screws and washers, plastic screw covers, wood, and weather stripping, made from polyethylene, polyurethane, polypropylene, and thermoplastic elastomer." *Id.* at 3. The Scope Request described the thresholds as "fully assembled at the time of entry, complete with all of the necessary components to be ready for installation within a door frame, or residential or commercial building without any further finishing or fabrication." *Id.*

Commerce issued the Scope Ruling on December 19, 2018, in response to Worldwide's Scope Ruling Request and the requests of Columbia Aluminum Products, LLC and MJB Wood Group, Inc., each of which also sought a scope ruling on assembled door thresholds. *Scope Ruling* 1. In the Scope Ruling, Commerce concluded that the aluminum extrusion components within Worldwide's door thresholds, and within those of the other two requestors, are subject to the Orders but that the non-aluminum components are not. *Id.* at 37–38.

Worldwide brought this action to contest the Scope Ruling on January 18, 2019. Summons, ECF No. 1; Compl. (Feb. 19, 2019), ECF No. 13. The Aluminum Extrusions Fair Trade Committee, which was the petitioner in the antidumping and countervailing duty investigations resulting in the Orders, and Endura Products, Inc., a domestic producer of door thresholds, are defendant-intervenors.

In response to Worldwide's motion for judgment on the agency record, the court issued its Opinion and Order remanding the Scope Ruling to Commerce for reconsideration.  *Worldwide I*, 44 CIT at __, 466 F. Supp. 3d at 1380.  Commerce filed its decision in response to *Worldwide I* (the "Remand Redetermination") on December 23, 2020.  *Final Results of Redetermination Pursuant to Ct. Remand* (Dec. 23, 2020), ECF No. 64-1.  ("*Remand Redetermination*").  Worldwide filed comments in opposition.  Pl.'s Comments in Opp'n to Remand Redetermination (Feb. 1, 2021), ECF No. 70 ("Worldwide's Comments").  Defendant-intervenors filed comments supporting the Remand Redetermination on the merits but also arguing that Worldwide failed to exhaust administrative remedies when it did not file comments with Commerce on draft remand results that Commerce circulated to the parties.  Def.-Int.'s Comments on Final Results of Redetermination Pursuant to Ct. Remand (Feb. 1, 2020), ECF No. 71 ("Def.-Int.'s comments").  Defendant filed a response to the comments, in which it too argued that Worldwide failed to exhaust administrative remedies.  Def.'s Resp. to Comments on Remand Redetermination (Mar. 4, 2021), ECF No. 76 ("Def.'s Resp.").

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions

brought under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a.[2]

Among the decisions that may be contested according to Section 516A is a

determination of "whether a particular type of merchandise is within the class or kind

of merchandise described in an . . . antidumping or countervailing duty order." *Id*.

§ 1516a(a)(2)(B)(vi).  In reviewing the Scope Ruling, the court must set aside any

determination, finding, or conclusion found "to be unsupported by substantial evidence

on the record, or otherwise not in accordance with law." *Id*. § 1516a(b)(1)(B)(i).

## B. Exhaustion of Administrative Remedies

During the administrative proceedings following the court's issuance of

*Worldwide I*, Commerce provided Worldwide and defendant-intervenors, on

November 20, 2020, draft remand results and invited the parties to submit comments

thereon by December 2, 2020.  *Remand Redetermination* 10.  Worldwide did not submit

comments to Commerce during this agency comment period.

On December 24, 2020, the day following the Department's submission of the

Remand Redetermination, Worldwide filed a motion requesting that the court issue a

"narrow" order that would: (1) remand the Remand Redetermination back to

Commerce, (2) allow Worldwide five days to file comments on the Department's draft

---

[2] All citations to the United States Code are to the 2012 edition and all citations to the Code of Federal Regulations are to the 2020 edition.

remand results, and (3) direct Commerce to consider Worldwide's comments in an

amended final remand redetermination.  Pl.'s Mot. for Remand and Leave to File

Comments 2 (Dec. 24, 2020), ECF No. 65.

    In its motion seeking a narrow remand, Worldwide explained the circumstances

under which it sought an opportunity to comment on the draft remand results.

Worldwide explained that "[o]n November 20, 2020, Plaintiff's former counsel, Baker

McKenzie LLP, filed an appearance on behalf of Worldwide Door in the underlying

remand segment before Commerce" and that "[o]n November 30, 2020, two days prior

to the deadline for filing comments on the draft remand results, Worldwide notified

Baker McKenzie that it had retained Kelly Drye & Warren LLP to represent it in this

scope ruling litigation."  *Id.* at 1–2.  The motion explained, further, that "owing to an

administrative oversight derivative of this transition between firms," counsel

submitting the motion "did not enter an appearance in the remand case segment before

Commerce" and "did not receive actual or constructive notice that the draft results had

been published."  *Id.* at 2.

    Defendant and defendant-intervenor opposed Worldwide's motion for a narrow

remand order.  Def.'s Opp'n to Pl.'s Mot. for Remand and Leave to File Comments

(Jan. 14, 2021), ECF No. 67; Def.-Int.'s Resp. to Pl.'s Mot. for Remand and Leave to File

Comments (Jan. 14, 2021), ECF No. 68.  The court denied the plaintiff's motion,

concluding that "plaintiff's motion does not present grounds justifying the interruption

of the orderly progression of the remand proceeding."  Order 2 (Jan. 19, 2021), ECF

No. 69.  The court added that plaintiff, in its comments to the court on the Remand

Redetermination, "may present its reasons why it believes the court, in its discretion

and under the circumstances presented, should not decline to consider plaintiff's

comments on the Final Remand Results for plaintiff's failure to exhaust administrative

remedies."  *Id.* at 2–3.  "Due to the substitution of counsel and the circumstances

presented in plaintiff's motion, the court is ordering a ten-day extension of the filing

dates for the comments and the response thereto on the Final Remand Results."  *Id.* at 3.

        In its comments on the Remand Redetermination, Worldwide raises two

arguments in support of the court's not requiring exhaustion of administrative remedies

in these circumstances.  It argues, first, that any argument raised by Worldwide would

have been futile.  Worldwide's Comments 15–16.  Worldwide argues that in a remand

redetermination Commerce submitted in other litigation contesting the Scope Ruling at

issue here ("*Columbia Remand Results*"), Commerce rejected the "nearly identical"

concerns Worldwide is raising in this litigation.  *Id.* at 16 (citing the Department's

remand redetermination in response to the court's opinion and order in *Columbia*

*Aluminum Products, LLC v. United States*, 44 CIT __, 470 F. Supp. 3d 1353 (2020)).

Plaintiff argues that "[a]s Worldwide Door raises nearly identical concerns, its

comments before the agency would have been pretextual for the Department to reissue

the same explanations as in the *Columbia Remand Results*." *Id.*  Worldwide observes that

the Remand Redetermination Commerce filed in this proceeding "and *Columbia Remand*

*Results* are remarkably similar and, in certain sections, appear to be the same,

paragraph-by-paragraph." *Id.* at 16 n.5.  Plaintiff argues, second, that exhaustion of

administrative remedies should not be required when a pure legal issue is involved and

that such is the case here, where the issue is an interpretation of the scope language.  *Id.*

at 17–18.

In its reply to comments, defendant argues, *inter alia*, that the futility exception

should be applied narrowly and only when the party already presented the arguments

to the agency in some form.  Def.'s Resp. 10 (citations omitted).  It argues, further, that

the exception should not be applied here because the arguments allegedly rejected

previously were made in a separate proceeding, not this one.  *Id.* (citation omitted).  As

to the "pure legal question" argument, defendant submits that the issue in this case, as

in all proceedings related to scope rulings, is fact-specific, involving facts associated

with Worldwide's door thresholds.  *Id.* at 11 (citations omitted).  Defendant-intervenors,

similarly, argue that the court should require exhaustion of administrative remedies

due to Worldwide's failure to comment on the draft remand results.  Def.-Int.'s

Comments 17–19.

Court No. 19-00012                                                        Page 11

The court concludes that it is appropriate to apply the doctrine of exhaustion of administrative remedies in this circumstance. Were the court to excuse plaintiff's failure to exhaust administrative remedies in this situation, the court would be considering the arguments Worldwide made in comments to the court that Worldwide could have, and should have, allowed Commerce to consider in the first instance. Moreover, the court declines to presume, based on comments made by a different party in another proceeding, that it would have been futile for Worldwide to have made these arguments to Commerce.

The next issue is the consequence the court should attach to plaintiff's failure to exhaust its administrative remedies. Defendant argues that "[i]n sum, Worldwide neglected to comment during the remand proceeding and due to its failure to exhaust administrative remedies, we request that the Court decline to consider the comments Worldwide submitted to this Court and limit its review to whether Commerce complied with the Remand Order." Def.'s Resp. 12 (citation omitted). On that issue, defendant argues that Commerce complied with the court's remand order. *Id.* at 14.

The court agrees with the consequence defendant requests. Accordingly, the court does not consider the arguments made in Worldwide's comment submission to the court and confines its judicial review to whether the Remand Redetermination complies with the court's order in *Worldwide I*.

Court No. 19-00012                                                          Page 12

In *Worldwide I*, the court ruled that Commerce erred in declining to consider whether Worldwide's door thresholds could qualify for the finished merchandise exclusion provided in the scope language of the Orders. The court held that in submitting a redetermination, "Commerce now must give full and fair consideration to the issue of whether this exclusion applies, upon making findings that are supported by substantial record evidence." *Worldwide I*, 44 CIT at __, 466 F. Supp. 3d at 1380.

For the reasons discussed below, the court rules that Commerce, although complying with the court's remand order in part by addressing the issue of whether the finished merchandise exclusion applies, did not comply with it in full. As discussed in this Opinion and Order, Commerce, contrary to the court's direction, reached a factual finding or inference on a material issue in this litigation that is contradicted by record evidence. The court instructs Commerce to re-examine that factual issue and then reach a new determination on whether the finished merchandise exclusion applies to Worldwide's imported door thresholds.

### C. Methodology for Scope Determinations

According to the Department's regulations, "in considering whether a particular product is included within the scope of an order . . . the Secretary [of Commerce] will take into account the following: (1) the descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including

prior scope determinations) and the [International Trade] Commission."  19 C.F.R.

§ 351.225(k)(1).[3]  The provision is not written so as to identify the *only* sources of

information Commerce is permitted to consider.  As a fundamental matter, the

Department's inquiry must center on the scope language of the antidumping or

countervailing duty order, for the Department's role in issuing a scope ruling is to

interpret, not modify, the scope language.  *Duferco Steel, Inc. v. United States*, 296 F.3d

1087, 1095 (Fed. Cir. 2002) ("Commerce cannot interpret an antidumping order so as to

change the scope of that order, nor can Commerce interpret an order in a manner

contrary to its terms." (internal quotation marks and citation omitted)).  Moreover, to be

sustained upon judicial review, the determination must be supported by the record

evidence considered on the whole.  This necessarily requires consideration of the record

information contained in the scope ruling request, which ordinarily will include, *inter*

*alia*, "[a] detailed description of the product, including its technical characteristics and

uses."  19 C.F.R. § 351.225(c)(1)(i).

---

[3] If the "criteria" of § 351.225(k)(1) "are not dispositive, the Secretary will further consider: (i) The physical characteristics of the product; (ii) The expectations of the ultimate purchasers; (iii) The ultimate use of the product; (iv) The channels of trade in which the product is sold; and (v) The manner in which the product is advertised and displayed."  19 C.F.R. § 351.225(k)(2).

### D. The Scope Language of the Orders and the Court's Opinion and Order in *Worldwide I*

The relevant scope language, which is the same in both Orders, applies generally to "aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents)." *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653. Such extrusions may be "produced and imported in a wide variety of shapes and forms," and, after extrusion, may be subjected to drawing and to further fabrication and finishing. *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,654. The scope language also provides that:

> [S]ubject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks (that do not meet the finished heat sink exclusionary language below). Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation.

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654. In addition to a good that is itself an aluminum extrusion, the scope language of the Orders, by operation of a "subassemblies" provision, potentially brings within the scope of the

Orders an assembled good that contains one or more aluminum extrusions as parts.

The pertinent scope language and context are as follows:

> Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture.  Such parts that otherwise meet the definition of aluminum extrusions are included in the scope.  The scope includes the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the finished goods "kit" defined further below.[4]  The scope does not include the non-aluminum extrusion components of subassemblies or subject kits.

---

[4] The "finished goods kit exclusion" reads as follows:

> The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a "finished goods kit."  A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product.  An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product.

*Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650, 30,651 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653, 30,654 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").  Worldwide does not argue that the finished goods kit exclusion applies to its door thresholds.

*AD Order*, 76 Fed. Reg. at 30,650–51; *CVD Order*, 76 Fed. Reg. at 30,654.  The scope also

contains a "finished merchandise" exclusion for "finished merchandise containing

aluminum extrusions as parts that are fully and permanently assembled and completed

at the time of entry, such as finished windows with glass, doors with glass or vinyl,

picture frames with glass pane and backing material, and solar panels."  *AD Order*, 76

Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  In the Scope Ruling, Commerce

concluded that it was unnecessary for it to consider whether Worldwide's door

thresholds satisfied the requirements of the finished merchandise exclusion.  *See Scope*

*Ruling* 33–34.  Commerce reasoned that Worldwide's door thresholds were expressly

identified in the scope language as "door thresholds" and as "parts for final finished

products that are assembled after importation, including, but not limited to . . . door

frames."  *Id.* at 33.

        The court held in *Worldwide I* that Commerce misread the scope language in

concluding that the finished merchandise exclusion was irrelevant to its analysis.

*Worldwide I*, 44 CIT at __, 466 F. Supp. 3d at 1380.  Commerce determined that each of

Worldwide's imported door thresholds is "partially assembled merchandise" described

by the "subassemblies" provision because it contains an aluminum extrusion as a part

and because it is produced to be assembled into a door unit.  *Scope Ruling* 33.

Commerce cited the scope language references to door thresholds and parts of doors in

concluding that the finished merchandise exclusion was inapplicable.  *See id.* at 33–34.

Commerce overlooked that the subject of the sentence of the scope language referring to

"door thresholds" is "subject *extrusions*" and, similarly, that the subject of the sentence

referring to "parts for final finished products . . . including . . . door frames" is,

similarly, "subject aluminum *extrusions*."  *See AD Order*, 76 Fed. Reg. at 30,650–51; *CVD*

*Order*, 76 Fed. Reg. at 30,654 (emphasis added).  The latter sentence is confined

specifically to extrusions "described at the time of importation as parts for final finished

products," and the following sentence clarifies that "[s]uch parts that *otherwise meet the*

*definition of aluminum extrusions* are included in the scope."  *AD Order*, 76 Fed. Reg. at

30,650–51; *CVD Order*, 76 Fed. Reg. at 30,654 (emphasis added).  The scope language

defines aluminum extrusions as "shapes and forms, produced by an extrusion process."

*AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653.  The extruded

aluminum components in Worldwide's door thresholds are described by these words,

but the assembled door thresholds are not.  Logically, an article cannot be both an

"extrusion" and an assembly containing an extrusion as one part among several other

parts that are not aluminum extrusions.  As *Worldwide I* observed, "according to the

uncontested facts, Worldwide's door thresholds are not 'aluminum extrusions' at the

time of importation; rather, they are door thresholds that contain an aluminum

extrusion as a component in an assembly."  44 CIT at __, 466 F. Supp. 3d at 1357.

### E. The Remand Redetermination Reaches a Finding or Inference that Is Unsupported by Record Evidence

In the Remand Redetermination, Commerce disagreed that the finished

merchandise exclusion was relevant to its analysis.  *See Remand Redetermination* 10–11.

Under protest, Commerce proceeded to address the issue of whether the finished

merchandise exclusion applied to Worldwide's imported door thresholds.[5]  Commerce

concluded that Worldwide's door thresholds are "partially assembled merchandise"

and "intermediate products" for purposes of the subassemblies provision in the Orders.

*Id.* at 23.  From the fact that Worldwide's door thresholds are produced "for installation

within a door frame or residential or commercial building," Commerce concluded that

"Worldwide's door thresholds do not function on their own, but rather are incorporated

---

[5] In protesting the court's ruling, Commerce relies upon certain judicial decisions, none of which involved the products at issue in this case.  Commerce states in the Remand Redetermination that "we believe that the Federal Circuit's holdings in *Meridian* and *Whirlpool* (which were not addressed by the Court in the *Remand Order*) are instructive and support Commerce's Final Scope Ruling."  *Final Results of Redetermination Pursuant to Ct. Remand* 11 (Dec. 23, 2020), ECF No. 64-1 ("*Remand Redetermination*") (citing *Meridian Prods., LLC v. United States*, 890 F.3d 1272 (Fed. Cir. 2018) and *Whirlpool Corp. v. United States*, 890 F.3d 1302 (Fed. Cir. 2018)).  These decisions by the Court of Appeals for the Federal Circuit do not support the Department's position that it need not consider the finished merchandise exclusion if it deems the good at issue to be a "subassembly."  *See Remand Redetermination* 15 ("Finally, because we find the door thresholds are subassemblies under the general scope language, we also find that they do not meet the exclusion criteria for 'finished merchandise' and are therefore covered by the scope of the *Orders*.").

into a larger downstream product," *id.*, to which Commerce also referred as a

"completed door unit," *id.* at 36.

In concluding that Worldwide's door thresholds did not qualify for the finished

merchandise exclusion, Commerce also relied on certain other record evidence

submitted by the petitioner and Endura, as follows:

> Moreover, the record evidence submitted by the petitioner and Endura
> indicates that the completed door unit is highly customizable, and may
> require additional cutting and machining of the door threshold.  Door pre-
> hangers may further customize door thresholds, along with other door
> unit components, before final assembly of the door unit.  Although door
> thresholds are available in a variety of standard lengths, they are
> generally manufactured to a longer length that is cut or machined to meet
> the requirements of a specific order.  The evidence submitted by the
> petitioner and Endura also indicates that in the remodeling market
> segment for door thresholds, thresholds can be sold as parts of pre-hung
> door units or as replacement parts for finished door assemblies.
> Thresholds sold by retailers in the remodeling segment often require
> further cutting and sizing to meet the specific requirements of the door
> assembly into which the thresholds are incorporated.  Thus, we find that
> the information submitted by the petitioner and Endura is consistent with
> and supports our determination that Worldwide's door thresholds are
> not, in and of themselves, final finished products, but are, rather, an
> intermediate product that is meant to be incorporated into a larger
> downstream product, which is the finished merchandise.

*Id*. at 36–37 (footnotes omitted).  The quoted language infers (but does not state

unambiguously) from the record that the particular door thresholds at issue in this

litigation, i.e., those described in Worldwide's Scope Ruling Request, are so designed

and manufactured as to require cutting or machining prior to assembly of a door unit or

other structure.  But whether the court interprets the Department's language to be a

finding of fact or an inference does not matter.  In either case, it is contrary to certain

record evidence consisting of the description of Worldwide's door thresholds in the

Scope Ruling Request, which described the thresholds as "fully assembled at the time of

entry, complete with all of the necessary components to be ready for installation within

a door frame, or residential or commercial building *without any further finishing or*

*fabrication*."  *Scope Ruling Request* 3 (emphasis added).  While identifying evidence

submitted by the petitioner and Endura referring *generally* to door thresholds,

Commerce does not bring to the court's attention evidence that the articles actually at

issue in this litigation are so designed and manufactured as to require cutting or

machining prior to use.  And if they are so designed and manufactured, then they are

not the articles described in the Scope Ruling Request.

In their comments on the Remand Redetermination, defendant-intervenors state

that "[w]hile door thresholds are available in a variety of standard lengths, they are

*generally* manufactured to a longer length that is cut or machined once the order-specific

requirements are known."  Def.-Int.'s Comments 10 (emphasis added) (citing their own

submissions on the record).  Defendant-intervenors conclude from this statement that

"[b]ecause of the need to customize the threshold to match the many specific

requirements of the particular door assembly, it would not make economic sense as an

import model to finish the customization of the threshold prior to importation and it is likely that imported door threshold products *generally* are further cut to size either at importers' domestic facilities or at pre-hangers' facilities." *Id*. at 10–11 (emphasis added) (citing their own submissions on the record). They add that "even thresholds sold as replacement parts also *generally* must be cut to size to match the particular door assembly they are going to be a part of." *Id*. at 12 (emphasis added) (citing their own submissions on the record).

Defendant-intervenors' comments, and the evidence they cite, are not directed to the specific issue the court identifies, which is whether *Worldwide's* imported thresholds, as identified in the Scope Ruling Request, are so designed and manufactured as to require cutting or machining prior to use as a component in a door unit or other structure. The evidence submitted by defendant-intervenors, as identified by Commerce in the Remand Redetermination and by defendant-intervenors in their comment submission, and as viewed against the record as a whole, does not constitute substantial evidence to support a conclusion or inference that Worldwide's door thresholds are so designed and manufactured. But because Commerce relied, at least in part, on this evidence to conclude that the finished merchandise exclusion was not applicable to Worldwide's door thresholds, the court must remand the agency's decision once again. The issue to which this evidence pertains, i.e., whether

Worldwide's door thresholds are designed and manufactured so as to require cutting or

machining prior to use, is directly relevant to the applicability of the finished

merchandise exclusion, which pertains to "finished merchandise containing aluminum

extrusions as parts that are fully and permanently assembled *and completed* at the time

of entry." *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654 (emphasis

added).

### F. Commerce Must Reconsider the Applicability of the Finished Merchandise Exclusion Based on the Exemplars Stated Therein

The scope exclusion central to this case has a list of exemplars. *AD Order*, 76

Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654 (listing as exemplars "finished

windows with glass, doors with glass or vinyl, picture frames with glass pane and

backing material, and solar panels"). In the Remand Redetermination, Commerce

reasoned, as to these exemplars, that "[w]e find that these product examples do not

constitute subassemblies within the meaning of the general scope language, but, rather,

are examples of fully and permanently assembled and completed products." *Remand

Redetermination* 18. Commerce added that "[a]ccordingly, an assembled aluminum

extrusion door frame without glass could be considered a subassembly, and therefore

covered by the scope, thus falling short of the final finished door with glass which

would be excluded." *Id.* at 18–19.

Court No. 19-00012                                                        Page 23

In distinguishing Worldwide's door thresholds from goods Commerce considered to satisfy the finished merchandise exclusion, Commerce reasoned that "[a] subassembly is merchandise which is designed for the sole purpose of becoming part of a larger whole." *Id*. at 24. Under the Department's reasoning, the express mention of the finished goods kit exclusion, but not the finished merchandise exclusion, in the subassemblies language of the Orders supports its interpretation that a good Commerce considers to be a "subassembly" within the meaning of the subassemblies provision cannot qualify for the finished merchandise exclusion. *Id*. at 18 ("The lack of such express language supports the conclusion that products that are included in the scope because they satisfy the subassemblies language cannot also be excluded as finished merchandise under the finished merchandise exclusion.").

Commerce considered Worldwide's door thresholds to be "subassemblies" because they "do not function on their own, but rather are incorporated into a larger downstream product." *Id*. at 23. Commerce described that product as "an entire door unit" and as "a completed door unit" that "requires additional parts, such as door jambs, a door panel, glass, hinges, weatherstripping, and other hardware parts." *Id*. at 36.

The Remand Redetermination appears to overlook a critical distinction: the exemplar in the finished merchandise exclusion explicitly refers to "*doors* with glass or

vinyl," not "finished door units" or "completed door units" consisting of assembled combinations of a door, a door frame, and other parts such as door jambs, weatherstripping, and necessary hardware.  A "door" assembled from one or more aluminum extrusions and components of vinyl or glass, is itself only a component of what Commerce itself described as a finished or completed door unit.  Like one of Worldwide's door thresholds, it is "designed for the sole purpose of becoming part of a larger whole," *id*. at 24.  To interpret the words "doors with glass or vinyl" to refer only to complete, assembled door units, i.e., those complete with doors, door frames, hinges, weatherstripping, and all other necessary hardware and fittings, as Commerce apparently did, is to adopt an interpretation that is contrary to the plain meaning of the door exemplar as it appears in the scope language.  The door exemplar refers to "doors," making no mention of door "units," door "frames," or complete assemblies with hardware and other required components.  The Department's role in a scope ruling is to interpret, not modify, the scope language, and it may not interpret an order contrary to its terms.  *Duferco Steel*, 296 F.3d at 1095 (Fed. Cir. 2002).

Under the Department's analysis, only goods that are not "designed for the sole purpose of becoming part of a larger whole," *Remand Redetermination* 24, can satisfy the finished merchandise exclusion, but this rationale is contrary to the terms by which that exclusion is expressed in the scope language.  Two of the exemplars—the

Court No. 19-00012                                                    Page 25

aforementioned door exemplar and the "finished windows with glass" exemplar—*are*

specifically designed for the sole purpose of becoming part of a larger whole.  Even the

products Commerce itself considered to satisfy the finished merchandise exclusion, i.e.,

a complete, assembled door unit, and a "final finished door with glass," *id*. at 19, do not

"function on their own," *id*. at 23, and cannot function until incorporated into a wall or

other part of a building.  The Remand Redetermination does not offer a plausible

explanation of why the articles mentioned in the "door" and "window" exemplars of

the finished merchandise exclusion satisfy that exclusion but that Worldwide's door

thresholds, as described in the Scope Ruling Request, do not.

### III.  Conclusion and Order

In conclusion, Commerce did not comply fully with the court's instruction in

*Worldwide I* with respect to the finished merchandise exclusion.  *Worldwide I*, 44 CIT at

__, 466 F. Supp. 3d at 1380 ("Commerce now must give *full and fair* consideration to the

issue of whether this exclusion applies, upon making findings that are *supported by*

*substantial record evidence*." (emphasis added)).  On remand, Commerce must undertake

this task again.  After reaching a finding from the record evidence that the door

thresholds at issue in this case either are, or are not, so designed and produced as to

require cutting or machining prior to use, Commerce must consider that finding in

Court No. 19-00012                                                                 Page 26

deciding anew whether the finished merchandise exclusion applies to the specific door

thresholds at issue in this litigation.

Therefore, upon consideration of the Remand Redetermination and all papers

and proceedings had herein, and upon due deliberation, it is hereby

**ORDERED** that the Remand Redetermination is remanded to Commerce for
reconsideration in light of this Opinion and Order; it is further

**ORDERED** that Commerce, within 90 days from the date of issuance of this
Opinion and Order, shall submit a second redetermination upon remand ("Second
Remand Redetermination") that complies with this Opinion and Order; it is further

**ORDERED** that plaintiff and defendant-intervenors shall have 30 days from the
filing of the Second Remand Redetermination in which to submit comments to the
court; and it is further

**ORDERED** that should plaintiff or defendant-intervenors submit comments,
defendant shall have 15 days from the date of filing of the last comment to submit a
response.

　　　　　　　　　　　　　　　　　　　　　　　／s/ Timothy C. Stanceu　　　　
　　　　　　　　　　　　　　　　　　　　　　Timothy C. Stanceu, Judge

Dated: September 14, 2021
　　　　New York, New York