**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE**

|  |  |  |
|---|---|---|
| **WORLDWIDE DOOR COMPONENTS, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **UNITED STATES,** | ) | **Court No. 19-00012** |
| **Defendant,** | ) | |
| **and** | ) | |
| **ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE and  ENDURA PRODUCTS, INC.,** | ) | |
| **Defendant-Intervenors.** | ) | |

**PLAINTIFF'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION**


JOHN M. FOOTE
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Worldwide Door Components, Inc.

January 12, 2022

**Table of Contents**

**Page**

I.  HISTORY OF THE PROCEEDING ..............................................................................1

II.  THE DEPARTMENT FULLY COMPLIED WITH THE COURT'S REMAND ORDER AND CORRECTLY DETERMINES THAT THE DOOR THRESHOLDS ARE FINISHED MERCHANDISE EXCLUDED FROM THE ORDERS' SCOPE..................................................................................3

    A.  The Department Applies the "Finished Merchandise" Exclusion Consistently with the Orders' Scope.........................................................................3

        1.  The Department's Erroneous Construction of Scope .................................4

        2.  The Department Applies the Court's Construction of Scope, Consistently with Worldwide Door I and Worldwide Door II......................................................................................8

    B.  The Department Reconciles Record Evidence that Squarely Demonstrates that the Door Thresholds Are Finished Merchandise, Excluded From the Orders' Scope.........................................................................8

III.  CONCLUSION.............................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

ArcelorMittal Stainless Belgium N.V. v. United States,
   694 F.3d 82 (Fed. Cir. 2012).................................................................................. 4-5

Mid Continent Nail Corp. v. United States,
   725 F.3d 1295 (Fed. Cir. 2013)....................................................................................6

Worldwide Door Components, Inc. v. United States,
   466 F. Supp. 3d 1370 (Ct. Int'l Trade 2020) ("Worldwide Door I")................................ 2, 6-8

Worldwide Door Components, Inc. v. United States,
   537 F. Supp. 3d 1403 (Ct. Int'l Trade 2021) ("Worldwide Door II") ............................ *passim*

**Administrative Determinations**

Aluminum Extrusions from the People's Republic of China,
   76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) ("AD Order") ........................... *passim*

Aluminum Extrusions from the People's Republic of China,
   76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) ("CVD Order") ....................... *passim*

Final Results of Redetermination Pursuant to Court Remand:
   (Dep't Commerce Dec. 23, 2020) (ECF No. 64) (First Remand P.R. 12)
   ("First Remand Results")................................................................................... *passim*

Final Results of Redetermination Pursuant to Court Remand:
   (Dep't Commerce Dec. 13, 2021) (ECF No. 85-1) (Second Remand P.R. 4)
   ("Second Remand Results") ............................................................................... *passim*

These comments are filed on behalf of Worldwide Door Components, Inc. ("Worldwide" or "Plaintiff") in support of the U.S. Department of Commerce's (the "Department" or "Commerce") Final Results of Redetermination Pursuant to Court Remand, Dec. 13, 2021 (ECF No. 85-1) (Second Remand P.R. 4) ("Second Remand Results").[1]  In its second redetermination pursuant to the court's remand order in Worldwide Door Components, Inc. v. United States, 537 F. Supp. 3d 1403 (Ct. Int'l Trade 2021) ("Worldwide Door II"), the Department concludes that Worldwide's door threshold assemblies fall outside the scope language in the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China as finished merchandise excluded from the Orders' scope.  See Aluminum Extrusions from the People's Republic of China, 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) (antidumping duty order) ("AD Order"); Aluminum Extrusions from the People's Republic of China, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (countervailing duty order) ("CVD Order") (collectively, "Orders").  Because the Department complied with this Court's remand order in Worldwide Door II and applied the Court's interpretation of the scope language, in view of the record evidence, to find that Plaintiff's door threshold assemblies were not within the Orders' scope, the Second Remand Results should be upheld.

## I.   HISTORY OF THE PROCEEDING

On August 23, 2017, following the publication of the Orders, Worldwide requested a scope ruling for eighteen models of door threshold assemblies in seven product categories

---

[1]   Documents in the administrative record are cited by their public record number (i.e., "(P.R.__)") or by their remand administrative record numbers (i.e., "(First Remand P.R. __)" and "(Second Remand P.R.   )") provided in the Index to the Administrative Record filed with the Court on April 1, 2019 (ECF No. 27), and the Indexes to the Remand Records filed on January 6, 2021 (ECF No. 66) and December 27, 2021 (ECF No. 86), respectively.

(collectively, "Door Thresholds").  See Letter to Sec'y Ross, Re: "Request for a Scope Ruling Finding that Certain Fully Assembled Door Thresholds from the People's Republic of China are Not Subject to the Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China," dated Aug. 3, 2017 at Ex. A (P.R. 1) ("Scope Ruling Request"). The Department found that the Door Thresholds were covered by the Orders' scope, because the aluminum extrusion components fell within the Orders' description of subject merchandise and declined to consider whether the Door Thresholds were covered by the "finished merchandise" exclusion to the Orders.  See generally Memorandum to James Meader from Michael J. Heaney, Re: "Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Rulings on Worldwide Door Components, Inc., MJB Wood Group Inc., and Columbia Aluminum Products Door Thresholds," dated Dec. 19, 2018 (P.R. 36) ("Scope Determination").

On January 18, 2019, Worldwide commenced the present action to contest the scope ruling.  See Summons, Jan 18, 2019 (ECF No. 1); Compl., Feb. 19, 2019 (ECF No. 13).  On August 27, 2020, this Court issued its opinion in Worldwide Door Components, Inc. v. United States, 466 F. Supp. 3d 1370 (Ct. Int'l Trade 2020) ("Worldwide Door I"), holding that the Department erred in its interpretation of the scope language and ordering that the Department consider whether the Door Thresholds satisfy the requirements of the "finished merchandise" exclusion from the Orders' scope.  Worldwide Door I, 466 F. Supp. 3d at 1379.

On December 23, 2020, the Department filed its Redetermination Pursuant to Court Remand Order (ECF No. 64) (First Remand P.R. 12) ("First Remand Results").  Again, the Department found that Worldwide's Door Thresholds fell within the Orders' scope.  See

generally id.   Under protest, the Department evaluated whether the "finished merchandise"

exclusion applies, as previously instructed.   Id. at 23.   However, the Department reached a

factual conclusion in conflict with record evidence, prompting the Court, again, to remand and

order the Department to re-examine the record evidence.   See generally Worldwide Door II, 537

F. Supp. 3d at 1409-14.

On December 13, 2021, the Department issued the Second Remand Results.

**II.** **THE DEPARTMENT FULLY COMPLIED WITH THE COURT'S REMAND ORDER AND CORRECTLY DETERMINES THAT THE DOOR THRESHOLDS ARE FINISHED MERCHANDISE EXCLUDED FROM THE ORDERS' SCOPE**

In the Second Remand Results, the Department, under protest, concludes that

Worldwide's Door Thresholds fall outside of the Orders' scope as finished merchandise.   See

Second Remand Results at 10-12, 14-16 (Second Remand P.R. 4).   First, the Department applies

the Court's construction of the scope language and considers the applicability of the "finished

merchandise" exclusion.   Second, the Department, as instructed, evaluates record evidence

demonstrating that the Door Thresholds are not subassemblies and are excluded from the Orders'

scope as finished merchandise.   As the Department follows the remand order, the Court should

sustain the Second Remand Results.

**A.** **The Department Applies the "Finished Merchandise" Exclusion Consistently with the Orders' Scope**

In the Second Remand Results, the Department applies the finished merchandise

exclusion, although it continues to "disagree{} with the Court's interpretation of the scope

language." Id. at 10-11.   It finds that the Door Thresholds "satisfy the criteria for the finished

merchandise exclusion." Id. at 11.   The Department's conclusion follows from a construction of

the Orders' scope consistent with this Court's opinions, even though the Department, yet again,

refuses to reconsider the artificial distinction it had drawn between subassemblies, covered by

the Orders' scope, and finished merchandise that are not subassemblies, excluded from scope.

### 1.      The Department's Erroneous Construction of Scope

As background, the Department in the Scope Determination and <u>First Remand Results</u>,

determined that Worldwide's Door Thresholds were described by the scope as "parts for finished

products" that are assembled after importation, and that the Door Thresholds were

"subassemblies" like the listed "door threshold" exemplar.  <u>See</u> Scope Determination at 33-34

P.R. 36); <u>First Remand Results</u> at 8-9, 13-21 (First Remand P.R. 12).  The Department further

found the finished merchandise exclusion "inapposite" to evaluating whether the Door

Thresholds fell in or outside of the Orders' scope.  <u>See</u> Scope Determination at 35-36 (P.R. 36);

<u>see also</u> <u>First Remand Results</u> at 15 (First Remand P.R. 12).  In the Department's view,

merchandise, like the subject Door Thresholds, that is designed to become part of a larger whole

is subject to the Orders as a "subassembly" and cannot qualify for the finished merchandise

exclusion.  <u>First Remand Results</u> at 18 (Products that "satisfy the subassemblies language cannot

also be excluded as finished merchandise under the finished merchandise exclusion.").  This is a

fatal flaw in the Department's interpretation of the Orders, in that it is contrary to the Orders'

plain language and black letter law on scope exclusions, as well as the very exemplars identified

in the finished merchandise exclusion.

First, the plain language of the scope does not support the Department's position that all

"subassemblies" are necessarily included within the Orders' scope and, further, that a

"subassembly" comprises all merchandise "which is designed for the sole purpose of becoming

part of a larger whole." <u>First Remand Results</u> at 23-24.  The scope of the Orders, like the scopes

of many antidumping and countervailing duty orders, consists of (1) general inclusionary scope language, followed by (2) exclusions from the scope.  Cf. ArcelorMittal Stainless Belgium N.V. v. United States, 694 F.3d 82, 87 (Fed. Cir. 2012) (holding that, if the governing scope language in an antidumping or countervailing duty order is not ambiguous, the analysis ends there).  The general scope language describes merchandise covered by the Orders as, relevant here, "aluminum extrusions that may be described at the time of importation as parts for final finished products that are assembled after importation . . ."  AD Order, 76 Fed. Reg. at 30,650; CVD Order, 76 Fed. Reg. at 30,654.  Aluminum extrusion components "that are attached (e.g., by welding or fasteners) to form subassemblies . . ." fall within the Orders' scope.  AD Order, 76 Fed. Reg. at 30,650; CVD Order, 76 Fed. Reg. at 30,654.  A subassembly is defined as "partially assembled merchandise."  See AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654.  The scope of the Orders then excludes "**finished merchandise** containing extrusions as parts **that are fully and permanently assembled and completed at the time of entry**"—i.e., the finished merchandise exclusion.  AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654 (emphasis added).  Read as a whole, the Orders include within their Scope aluminum extrusion components that form subassemblies, but exclude finished merchandise containing extrusions as parts that are fully and permanently assembled and completed at the time of entry.

In finding that the finished merchandise exclusion applies to "'finished merchandise containing extrusions as parts that are fully and permanently assembled and completed at the time of entry,' *which expressly does not include a subassembly*," the Department bungles its application of the plain language of the scope.  See First Remand Results at 19 (emphasis added).

The Department supposes that the scope neatly defines two *mutually exclusive* categories: subassemblies, which are included, and finished merchandise, which is not.  Contrary to the Department's logic, a product can have properties that permit it to eventually be incorporated as a subassembly of a larger product or system, *and also* be a piece of finished merchandise in its own right, fully and permanently assembled and completed at the time of entry, to be bought and sold as is, without further modification.  In such a case, merchandise is excluded from the Orders, even if it could be described as a subassembly,

In Worldwide Door I and Worldwide Door II, the Court—correctly—held that this was a fatal flaw in the Department's interpretation of the scope language.  By imbuing the scope with mutual exclusivity between the subassemblies and finished merchandise clauses, the Department essentially rewrote the scope to ensure that the inclusionary language of the scope trumps the scope exclusion for finished merchandise, because the Department terminates its analysis upon finding that a product is a subassembly, rather than proceeding to consider whether the exclusionary language *may also* apply.  This is contrary to black letter law in the arena of antidumping and countervailing duty order scope interpretation, which firmly establishes that exclusionary language is only included in a scope to remove products that would otherwise be facially covered by an order.  See Mid Continent Nail Corp. v. United States, 725 F.3d 1295, 1301 (Fed. Cir. 2013) ("{M}erchandise facially covered by an order may not be *excluded* from the scope of the order unless the order can be reasonably interpreted so as to exclude it.") (emphasis in original).  The Court was therefore exactly correct to set aside the First Remand Results.

Second, the Department's interpretation is contradicted by the very exemplars identified in the finished merchandise exclusion, all of which could be considered subassemblies under the Department's definition of that term (i.e., "merchandise which is designed for the sole purpose of becoming part of the larger whole").  The scope lists examples of finished merchandise like "finished windows with glass{ and} doors with glass or vinyl."  See AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654.  These exemplars—like the Door Thresholds—are always "incorporated into a larger downstream product" after importation.  As the Court noted in Worldwide Door II, the exemplars "are specifically designed for the sole purpose of becoming part of a larger whole."  537 F. Supp. at 1414.  The Court explained:

> A "door" assembled from one or more aluminum extrusions and components of vinyl or glass, is itself only a component of what Commerce itself described as a finished or completed door unit. Like one of Worldwide's door thresholds, it is "designed for the sole purpose of becoming part of a larger whole," {First Remand Results} at 24. To interpret the words "doors with glass or vinyl" to refer only to complete, assembled door units, i.e., those complete with doors, door frames, hinges, weatherstripping, and all other necessary hardware and fittings, as Commerce apparently did, is to adopt an interpretation that is contrary to the plain meaning of the door exemplar as it appears in the scope language.

Id.    The finished merchandise exemplars would meet the Department's definition of subassemblies and, therefore, could not be excluded from the scope of the Orders, as the Department excluded Worldwide's Door Thresholds.  Cf. id. at 1414 ("The {Department} does not offer a plausible explanation of why the articles mentioned in the 'door' and 'window' exemplars of the finished merchandise exclusion satisfy that exclusion but that Worldwide's door thresholds, as described in the Scope Ruling Request, do not.").

Given the Department's incorrect and unreasonable interpretation of the scope language, the Court correctly remanded the Department's scope determination twice, with instructions to reconsider the application of the finished merchandise exclusion in light of record evidence. See Worldwide Door I, 466 F. Supp. 3d at 1380; Worldwide Door II, 537 F. Supp. 3d at 1414-15.

> **2.**     **The Department Applies the Court's Construction of Scope, Consistently with Worldwide Door I and Worldwide Door II**

In the Second Remand Results, notwithstanding its protest, the Department finally applies the legally correct construction of the Orders' scope language to Worldwide's Door Thresholds. See Second Remand Results at 11-12 (Second Remand P.R. 4). The Department's application of the scope's plain language, as instructed by the Court, should therefore be upheld.

> **B.**     **The Department Reconciles Record Evidence that Squarely Demonstrates that the Door Thresholds Are Finished Merchandise, Excluded From the Orders' Scope**

Having adopted the legally correct construction of the Orders' scope, the Department addresses record evidence, as instructed by the Court, that demonstrates the Door Thresholds are not "subassemblies" but "finished merchandise" described by the scope's exclusion. Second Remand Results at 11-12, 15-16. Specifically, in Worldwide Door II, the Court questioned how the Department could characterize Worldwide's Door Thresholds as subassemblies when the record evidence does not establish that the Door Thresholds at issue require further processing prior to assembly (i.e., cutting or machining). 537 F. Supp. 3d at 1412. To the contrary, the Court observed, the Scope Ruling Request described the thresholds as fully assembled at the time of entry, complete with all of the necessary components to be ready for installation within a door frame, or residential or commercial building without any further finishing or fabrication." Id. (citing Scope Ruling Request at 3 (P.R. 1)).

In addition to the evidence the Court reviewed, unrebutted record evidence demonstrates that the Door Thresholds are fully finished assemblies at the time of entry, with multiple non-aluminum and non-extruded components, such as synthetic plastic polymers (polyvinyl chloride, polyethylene, polyurethane, and thermoplastic elastomer), wood, weather-stripping, and stainless steel.   See Scope Ruling Request at Ex. A (P.R. 1).   Worldwide's Door Thresholds are manufactured to customer specification, and so do not require any further assembly, fabrication, or cutting following importation.   See Letter to Secretary Ross "Re: Response to Petitioner's Comments on Scope Ruling Request for Worldwide Door Thresholds," dated Jan. 11, 2018 at Ex. 1 (P.R. 12).   Worldwide's Door Thresholds are bought, as is, by Worldwide's customers, without the need for further fabrication or cutting post-importation.   Substantially similar door thresholds are bought and sold, as-is, by retailers, such as Lowes, as additions to doors or as replacement parts. See Letter to Secretary Ross "Re: Aluminum Extrusions from the People's Republic of China: Comments on Worldwide's Scope Ruling Request," dated Nov. 20, 2017 at Ex. 9 (showing photographs of multi-component door threshold, along with installation instructions, sold by Lowes, and acknowledging the replacement market for thresholds) (P.R. 11).

In the Second Remand Results, the Department backs away from its previous finding, accepting—rather than inventing—that the record evidence clearly establishes that the Door Thresholds are finished merchandise, not subassemblies.   Second Remand Results at 11-12, 15-16.   Therefore, the Department finally and correctly determines that the Door Thresholds are finished merchandise excluded from the Orders' scope.

III.     <u>CONCLUSION</u>

For the foregoing reasons, the Court should sustain the <u>Second Remand Results</u>.

JOHN M. FOOTE
KELLEY DRYE & WARREN LLP

Counsel to Wolrdwide Door Components, Inc.


January 12, 2022

**CERTIFICATE OF COMPLIANCE**
**WITH COURT OF INTERNATIONAL TRADE**
**STANDARD CHAMBERS PROCEDURES**

Pursuant to the Court of International Trade Standard Chambers procedures, counsel for

Plaintiff Worldwide Door Components, Inc. certifies that these Comments in Support of the U.S.

Department of Commerce's redetermination on remand contain 2,658 words, including

footnotes, tables, and charts.  The word count certification is made in reliance on the word-count

feature contained in Microsoft Word Office 2013.

Respectfully submitted,

/s/ John M. Foote
JOHN M. FOOTE
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400

Counsel to Plaintiff Worldwide Door
Components, Inc.

Dated:  January 12, 2022