NON-CONFIDENTIAL VERSION

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| **WORLDWIDE DOOR COMPONENTS, INC.,**<br><br>        **Plaintiff,**<br><br>        v.<br><br>**UNITED STATES,**<br><br>        **Defendant,**<br><br>    and<br><br>**ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE and ENDURA PRODUCTS, INC.,**<br><br>        **Defendant-Intervenors.** |

**Before:** Hon. Timothy C. Stanceu,
        Senior Judge

**Court No. 19-00012**

<u>**NON-CONFIDENTIAL VERSION**</u>

**Business Proprietary Information Removed from Pages 8, 13**

## <u>DEFENDANT-INTERVENORS' COMMENTS ON FINAL RESULTS OF SECOND REDETERMINATION PURSUANT TO COURT REMAND</u>

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Elizabeth S. Lee, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Aluminum Extrusions Fair Trade Committee and Endura Products, Inc.*

Dated: January 12, 2022

Ct. No. 19-00012                                    NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ......................................................................................... 1

II.    ARGUMENT .............................................................................................. 2

       A.    Commerce Has Correctly Interpreted the Scope of the Orders with
             Respect to "Subassemblies" and "Finished Merchandise"......................3

       B.    Commerce's Determination that Door Thresholds Are Excluded
             from the Scope of the Orders as "Finished Merchandise" is
             Unsupported by Substantial Evidence and Not in Accordance with
             Law ....................................................................................................6

             1.    Door Thresholds Are "Subassemblies" Within the Meaning
                   of the Scope of the Orders ........................................................7

             2.    The Record As A Whole Demonstrates that Door Thresholds
                   Do Not Meet the Requirements of the "Finished
                   Merchandise" Exclusion in the Scope of the Orders ................11

             3.    Conclusion ...........................................................................15

       C.    Commerce's Second Remand Results Conflict With A Recent
             Decision by This Court ......................................................................15

III.   CONCLUSION........................................................................................... 18

Ct. No. 19-00012                                    NON-CONFIDENTIAL VERSION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altx, Inc. v. United States,*
    370 F.3d 1108 (Fed. Cir. 2004)............................................................................12

*China Custom Mfg., Inc. v. United States,*
    No. 20-00121, slip op. 21-163 (Ct. Int'l Trade Dec. 6, 2021) ...........................16, 17

*Consol. Edison Co. of N.Y., Inc. v. NLRB,*
    305 U.S. 197 (1938)............................................................................................12

*Jacobi Carbons AB v. United States,*
    222 F. Supp. 3d 1159 (Ct. Int'l Trade 2017) .........................................................12

*Meridian Prods., LLC v. United States,*
    No. 13-00246, slip op. 20-43 (Ct. Int'l Trade Apr. 6, 2020) ..................................4

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,*
    918 F.3d 1355 (Fed. Cir. 2019).........................................................................6, 16

*Shenyang Yuanda Aluminum Industry Engineering Co. v. United States,*
    776 F.3d 1351 (Fed. Cir. 2015).......................................................................16, 17

*Worldwide Door Components, Inc. v. United States,*
    537 F. Supp. 3d 1403 (Ct. Int'l Trade 2021) ..............................................11, 12, 14

**Regulations**

19 C.F.R. § 351.225(k)(1).............................................................................................6

**Administrative Materials**

*Aluminum Extrusions from the People's Republic of China,* 76 Fed. Reg. 30,650
    (Dep't Commerce May 26, 2011)........................................................................2, 13

*Aluminum Extrusions From the People's Republic of China,* 76 Fed. Reg. 30,653
    (Dep't Commerce May 26, 2011)........................................................................2, 13

Ct. No. 19-00012                                          NON-CONFIDENTIAL VERSION

## I.     **INTRODUCTION**

On behalf of Defendant-Intervenors Aluminum Extrusions Fair Trade Committee ("AEFTC" or "Petitioner") and Endura Products, Inc. ("Endura") (collectively, "Defendant-Intervenors"), we respectfully submit the following comments on the December 13, 2021 second remand redetermination issued by the U.S. Department of Commerce ("Commerce").  *See* Final Results of Redetermination Pursuant to Court Remand, *Worldwide Door Components, Inc., v. United States*, Court No. 19-00012, Slip. Op. 21-115 (CIT September 14, 2021) (Dec. 13, 2021), ECF No. 85-1 ("Second Remand Results").  This action arises out of Commerce's final scope ruling finding that certain door thresholds imported by Plaintiff Worldwide Door Components, Inc. ("Worldwide") fall within the scope of the antidumping duty ("AD") and countervailing duty ("CVD") orders on aluminum extrusions from the People's Republic of China ("China") (collectively, the "Orders").  *See id.* at 1; Memorandum from Michael J. Heaney, Senior Int'l Trade Compliance Analyst, AD/CVD Operations, Off. VI, through Abdelali Elouaradia, Dir., AD/CVD Operations, Off. VI, to James Maeder, Assoc. Deputy Assistant Sec'y for AD/CVD Operations, re: *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Rulings on Worldwide Door Components Inc., MJB Wood Group Inc., and Columbia Aluminum Products Door Thresholds* (Dec. 19, 2018), AD P.R. 36,[1] CVD P.R.

---

[1]     Documents on the public record of the underlying scope inquiry are identified by "AD P.R." and "CVD P.R.," followed by the number assigned to the relevant document in the administrative record index filed with the court on April 1, 2019 (*amended* on March 10, 2021). Documents on the confidential administrative record are identified by "AD C.R." and "CVD C.R.," followed by the corresponding record number.  Documents on the public record of the first remand proceeding are identified by "AD P.R.R." and "CVD P.R.R.," followed by the number assigned to the relevant document in the administrative record index filed with the court on Jan. 6, 2021.  Documents on the public record of the second remand proceeding are identified by "AD P.R.R.2." and "CVD P.R.R.2.," followed by the number assigned to the relevant document in the administrative record index filed with the court on Dec. 27, 2021.  Documents on the confidential

Ct. No. 19-00012                                                    NON-CONFIDENTIAL VERSION

37 ("Door Thresholds Scope Ruling") at 1-2;[2] *see also Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) (antidumping duty order) ("AD Order") and *Aluminum Extrusions From the People's Republic of China*, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (countervailing duty order) ("CVD Order").

## II.   **ARGUMENT**

Commerce's second remand results are unsupported by substantial evidence and not in accordance with law.  AEFTC and Endura continue to maintain that Commerce's final scope ruling finding Worldwide's door thresholds to be expressly included within the scope of the Orders, and given the express inclusion (regardless of whether the door thresholds are ready for use at the time of importation), the agency's determination that the "finished merchandise" exclusion is inapplicable with respect to these products was correct.  *See* Door Thresholds Scope Ruling at 34-36; Def.-Intervenors' Resp. to Pl.'s Rule 56.2 Mot. for J. on the Agency R. (Oct. 9, 2019), ECF No. 43 at 13-16; Def.-Intervenors' Comments on Final Results of Redetermination Pursuant to Court Remand (Feb. 1, 2021), ECF No. 71 ("Defendant-Intervenors' Comments on First Remand Results") at 6-9.  Notwithstanding, Commerce's determination in the agency's first remand redetermination, under respectful protest, that even considering the "finished merchandise" exclusion, the door thresholds are "subassemblies" within the meaning of the scope of the Orders and not excludable as "finished merchandise" was also supported by substantial evidence and in accordance with law.  *See* Final Results of Redetermination Pursuant to Court Remand, *Worldwide Door Components, Inc. v. United States*, Court No. 19-00012, Slip. Op. 20-128 (CIT August 27,

---

administrative record are identified by "AD C.R.R.2." and "CVD C.R.R.2.," followed by the corresponding record number.

[2]     Commerce's final scope ruling also included decisions on requests made by two other importers of similar door thresholds.  *See* Door Thresholds Scope Ruling at 1-2.

Ct. No. 19-00012                                               NON-CONFIDENTIAL VERSION

2020), ECF No. 64-1 ("First Remand Results") at 10-28; Defendant-Intervenors' Comments on

First Remand Results at 9-17.   While acknowledging that Commerce made its determination in

the second remand results under respectful protest, the agency's reversal of its prior determinations

to conclude that Worldwide's door thresholds are not "subassemblies" within the meaning of the

scope of the Orders and, instead, meet the requirements of the "finished merchandise" exclusion

is in error.  *See* Second Remand Results at 11.

### A.      Commerce Has Correctly Interpreted the Scope of the Orders with Respect to "Subassemblies" and "Finished Merchandise"

As Defendant-Intervenors argued in their comments on Commerce's draft second remand

redetermination, Commerce's interpretation of the scope of the Orders with respect to

"subassemblies" and "finished merchandise" is correct.  *See* Letter from Wiley Rein LLP to Sec'y

Commerce, re: *Aluminum Extrusions from the People's Republic of China: Comments on Draft*

*Results of Redetermination* (Nov. 29, 2021), AD P.R.R.2 2, CVD P.R.R.2 2, AD C.R.R.2 1, CVD

C.R.R.2. 1 ("Defendant-Intervenors' Comments on Draft Remand Results") at 5-8.  Specifically,

as Commerce explained in the First Remand Results, the agency has revised its interpretation of

the scope of the Orders to bring it into compliance with the holdings of the Courts.  *See* First

Remand Results at 25.  Commerce laid out this framework in its second remand redetermination

in *Meridian Products LLC v. United States*, in which the agency ultimately found that kitchen

appliance door handles are "subassemblies" or "parts for" final finished goods which will become

"part of a larger whole, a kitchen appliance" after importation and are not excludable as "finished

merchandise."  *See* First Remand Results at 24-26; Memorandum from Michael J. Heaney and

Chelsey Simonovich, Senior Int'l Trade Compliance Analysts, AD/CVD Operations, Off. VI, to

Erin Kearney, Program Manager, AD/CVD Operations, Off. VI, re: *Citations for Draft*

*Redeterminations of: Worldwide Door Components, Inc. v. United States Slip Op. 20-128, Court*

*No. 19-00012, Columbia Aluminum Products, LLC v. United States Slip Cp. 20-129, Court No. 19-0013* (Nov. 20, 2020), AD P.R.R. 4-9, CVD P.R.R. 3-8 at Attachment 2 (Final Results of Second Redetermination Pursuant to Court Remand, *Meridian Products LLC v. United States*, Court No. 13-00246, Slip Op. 19-5 (CIT January 14, 2019) (May 15, 2019) at 30-31). Commerce's second remand redetermination in *Meridian Products* was sustained by this Court. *Meridian Prods., LLC v. United States*, No. 13-00246, slip op. 20-43 (Ct. Int'l Trade Apr. 6, 2020) ("Slip Op. 20-43").[3]

Furthermore, Commerce's interpretation of "subassemblies" and "finished merchandise" in the scope language is consistent with Petitioner's original intent to cover aluminum extrusions that form subassemblies within the scope but not final finished merchandise. *See* First Remand Results at 19-21. Specifically, Commerce explained in the First Remand Results, examining the Petition and related documents, that:

> Through their explanation and revisions, the petitioners clearly and consistently expressed their intent to exclude from the *Orders* certain aluminum extrusions imported as part of a kit, but include in the *Orders* other aluminum extrusions that are attached to form subassemblies that are not imported as part of a kit.

*See id.* at 20.

Commerce also found that "the petitioners made clear that they intended the finished merchandise exclusion to apply only to those assemblies which could be considered fully and permanently assembled and completed at the time of entry, and not subassemblies within the meaning of the general scope language." *See id.* at 21. Specifically:

> {T}he original scope language contained broader examples of finished merchandise, but the petitioners revised the scope language several times to make

---

[3]     Neither the plaintiff nor the plaintiff-intervenor submitted comments on the draft remand redetermination that Commerce had issued or comments to the Court on the final results of the second remand redetermination, and, thus, the Court did not reach the merits of Commerce's second remand redetermination. *See* Slip Op. 20-43 at 3-5.

> the examples of finished merchandise representative of merchandise which is fully
> and permanently assembled and completed at the time of entry.  For instance, the
> scope in the petition put forth the following examples of finished merchandise:
> "window frames, door frames, picture frames, and solar panels."  Soon thereafter,
> the petitioners proposed revising the examples of finished merchandise to make the
> windows and doors examples more complete: "windows with glass, doors, picture
> frames, and solar panels."  Subsequently . . . the petitioners proposed revising the
> doors and picture frames examples of finished merchandise to be even more
> complete: "windows *with glass, doors with glass or vinyl, picture frames with glass
> pane and backing material*, and solar panels{.}"  Commerce published this
> language in the *Orders*.

*See id.* at 21 (emphasis in original) (internal citations omitted).

Thus, Commerce properly interpreted the scope language as providing a distinction

between a subassembly that is covered by the scope and an assembly which satisfies the "finished

merchandise" exclusion:

> We note that "subassemblies" is broadly defined in the scope as "partially
> assembled merchandise{,}" which is distinct from products which are "fully and
> permanently assembled and completed" finished merchandise.  In other words, a
> subassembly could also be described as an intermediate product or any other
> partially assembled product that is something less than the full, permanent, and
> completed final finished product that would satisfy the finished merchandise
> exclusion.  In examining whether the aluminum extrusion components of an
> assembly are within the scope pursuant to the subassemblies language, or whether
> the entire assembly is excluded under the finished merchandise exclusion, we must
> consider whether the product is "partially assembled," as opposed to "fully and
> permanently assembled and completed."

*See id.* at 17 (internal citations omitted).

Commerce correctly concluded that products that meet the definition of "subassemblies"

covered by the scope cannot also be excluded as "finished merchandise."

> {I}n evaluating the subassemblies language in the general scope language, we note
> that there is a specific reference to the finished goods kit exclusion, which means
> that products which satisfy the subassemblies language may, nonetheless, be
> excluded under the finished goods kit exclusion.  However, the subassemblies
> language does not similarly reference the finished merchandise exclusion.  For
> example, the scope does *not* contain the following language: "{t}he scope includes
> the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners)
> to form subassemblies, *i.e.*, partially assembled merchandise unless imported as

> part of the finished goods 'kit' *or finished merchandise exclusion*."  The lack of
> such express language supports the conclusion that products that are included in the
> scope because they satisfy the subassemblies language cannot also be excluded as
> finished merchandise under the finished merchandise exclusion.

*See id.* at 18 (emphasis in original) (internal citations omitted).  The U.S. Court of Appeals for the

Federal Circuit ("Federal Circuit") has also agreed with Commerce's "straightforward reading" of

the Orders as excluding "subassemblies" only if they are imported as part of a "finished goods kit"

as defined in the scope of the Orders.  *See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United

States*, 918 F.3d 1355, 1367 (Fed. Cir. 2019) ("*Shenyang Yuanda II*").

The fact that a subassembly could be described in its own right with reference to its end

use, or that such subassembly requires no further fabrication or assembly to perform its function

as a subassembly, does not mean that it will constitute finished merchandise under the exclusion.

*See* First Remand Results at 17-18.  "Partially assembled" in the subassemblies provision in the

general scope language describes the final finished good.  In other words, the fact that a

subassembly may be complete at the time of importation does not exclude it from the scope.  Such

an interpretation improperly expands the "finished merchandise" exclusion and reads the

subassembly language out of the scope entirely.  For this reason, Commerce's conclusion that a

"subassembly" is merchandise designed for the sole purpose of becoming part of a larger whole is

correct. *See id.* at 24.

Commerce's interpretation of the scope is reasonable and fully supported by the plain

language of the scope and the factors in 19 C.F.R. § 351.225(k)(1).

**B.**      **Commerce's Determination that Door Thresholds Are Excluded from the
         Scope of the Orders as "Finished Merchandise" is Unsupported by Substantial
         Evidence and Not in Accordance with Law**

While Defendant-Intervenors recognize that Commerce made its determination under

respectful protest, Commerce's reversal of its prior determinations to conclude in the Second

Ct. No. 19-00012                                              NON-CONFIDENTIAL VERSION

Remand Results that door thresholds are not "subassemblies" within the meaning of the scope of the Orders and, instead, meet the requirements of the "finished merchandise" exclusion is unsupported by substantial evidence and not in accordance with law.  *See* Second Remand Results at 11.

> 1.     **Door Thresholds Are "Subassemblies" Within the Meaning of the Scope of the Orders**

Commerce's prior determination that the door thresholds constitute aluminum extrusion components that are attached with non-aluminum extrusion components at the time of importation to form a subassembly, as described by the general scope language, and are not the fully and permanently assembled and completed final finished product that would satisfy the "finished merchandise" exclusion was correct.  *See* First Remand Results at 23; *see also* Defendant-Intervenors' Comments on Draft Remand Results at 8-12.

As Commerce explained in the First Remand Results, Worldwide stated that its thresholds contain all necessary components <u>for installation within a door frame or residential or commercial building</u>, and also provided a report from a testing laboratory documenting how the thresholds are <u>mounted within door frames and permanent building structures</u>.  *See* First Remand Results at 35-36.  Commerce found that this description indicates that Worldwide's thresholds do not function on their own, and, instead, are incorporated into a larger downstream product.  *See id.* at 36. Worldwide had also reported that the imported thresholds are usually fastened within a door frame or into a permanent building structure using screws or staples supplied by its customers, with the screws and staples necessary for such mounting being determined by the requirements of the individual customer, depending on the design of and materials used to construct the door frame, the nature of the permanent building structure, and the relevant building codes.  *See* Letter from Baker & McKenzie LLP to Sec'y Commerce, re: *Response to Supplemental Questionnaire on*

*Scope Ruling Request for Worldwide Door Thresholds* (Nov. 7, 2017), AD P.R. 10, CVD P.R. 10, AD C.R. 2-7, CVD C.R. 2-7 at 1-2.   The testing results that Worldwide submitted, which the company explained evaluated its thresholds for compliance with various building code requirements, indicate that [

                    ].  *See id.* at 2, Exhibit 2.

[                    ], Defendant-Intervenors provided additional record evidence that further demonstrates that door thresholds function as subassemblies that are part of a larger downstream product.  *See* First Remand Results at 36-37; *see also id.* at 33-35.  This included information demonstrating that the industry considers the complete door unit (including the threshold, remaining three door frame parts, door panel, door glass, hinges, weathersealing and other hardware products) to be the finished product, not the threshold.  *See id.* at 33; Letter from Wiley Rein LLP to Sec'y Commerce, re: *Aluminum Extrusions from the People's Republic of China: Comments on Worldwide's Scope Ruling Request* (Nov. 17, 2017), AD P.R. 11, CVD P.R. 11, AD C.R. 8, CVD C.R. 8 ("Defendant-Intervenors' Nov. 17, 2017 Letter") at Exhibits 1, 3; Letter from Wiley Rein LLP to Sec'y Commerce, re: *Aluminum Extrusions from the People's Republic of China: Submission of Exhibits* (Sept. 4, 2018), AD P.R. 30, CVD P.R. 30, AD C.R. 18-19, CVD C.R. 18-19 ("Defendant-Intervenors' Sept. 4, 2018 Letter") at Exhibit 2.  Defendant-Intervenors also submitted information demonstrating that door thresholds are highly customizable and generally require further finishing and fabrication before assembly into a finished door unit.  *See* First Remand Results at 34; Defendant-Intervenors' Nov. 17, 2017 Letter at Exhibit 1.  While door thresholds are available in a variety of standard lengths, they are generally manufactured to a longer length that is cut or machined once the order-specific requirements are known.  *See* First Remand Results at 34; Defendant-Intervenors' Nov. 17, 2017 Letter at Exhibit 1.  Because of the

need to customize the threshold to match the many specific requirements of the particular door assembly, it would not make economic sense as an import model to finish the customization of the threshold prior to importation and it is likely that imported door threshold products generally are further cut to size either at importers' domestic facilities or at pre-hangers' facilities.  *See* First Remand Results at 34; Defendant-Intervenors' Nov. 17, 2017 Letter at Exhibit 1.   The overwhelming number of thresholds sold in the United States are sold to "pre-hangers," who obtain all the necessary components and assemble the entire finished door unit, which is sold to builders or contractors, who then install the finished door unit in a building.  *See* First Remand Results at 34; Defendant-Intervenors' Nov. 17, 2017 Letter at Exhibit 1.  Again, these components include the door threshold, the remaining door frame parts or door jambs, door panel, door glass, hinges, weathersealing, and other hardware products.  *See* First Remand Results at 34; Defendant-Intervenors' Nov. 17, 2017 Letter at Exhibit 1; Defendant-Intervenors' Sept. 4, 2018 Letter at Exhibit 1.

Defendant-Intervenors also provided a declaration from the Director of Millwork Purchasing at BMC, which serves the residential housing market and offers a wide range of products and services, including building materials, such as millwork and structural component manufacturing, including prehung entry doors, which explained that:

> {O}nce BMC assembles a prehung door, the finished product must be tested to ensure that it meets the relevant building codes.  When building products, such as doors, are tested for purposes of assessing whether various building codes are met, the product that is tested is the entire door unit, *i.e.*, the finished product, not the individual components, such as thresholds.

*See* Defendant-Intervenors' Sept. 4, 2018 Letter at Exhibit 2.

Pre-hangers will often further customize the door as necessary at the shop once they collect all the necessary parts for assembling the finished door unit, resulting in additional finishing and

fabrication to the door parts. *See* Defendant-Intervenors' Nov. 17, 2017 Letter at Exhibit 1; *see also* Defendant-Intervenors' Sept. 4, 2018 Letter at Exhibit 2; Letter from Wiley Rein LLP to Sec'y Commerce, re: *Aluminum Extrusions from the People's Republic of China: Response to Worldwide's Comments* (Jan. 18, 2018), AD P.R. 14-16, CVD P.R. 14-16, AD C.R. 9-11, CVD C.R. 9-11 ("Defendant-Intervenors' Jan. 18, 2018 Letter") at Exhibit 3. The only thresholds that are sold separately are "replacement" parts, *e.g.*, if a threshold is damaged or for a remodel. *See* Defendant-Intervenors' Nov. 17, 2017 Letter at 23-24 ("In the remodeling market segment, thresholds are often sold to retail stores such as Home Depot or Lowe's that sell replacement parts for completing or repairing the finished door unit."); *see also id.* at Exhibit 3. Even thresholds sold as replacement parts also generally must be cut to size to match the particular door assembly that they are going to be a part of. *See id.* at 26, Exhibit 3.

Given that Commerce's scope ruling also included decisions on scope ruling requests from two other importers of similar door thresholds, it was proper for the agency to also consider the product descriptions provided by the two other importers, MJB Wood Group, Inc. ("MJB") and Columbia Aluminum Products, LLC ("Columbia"), which were discussed in the agency's final scope ruling and also indicate that these types of products are not in and of themselves the final finished product, but rather a component of a larger downstream product. *See* First Remand Results at 23-24; Door Thresholds Scope Ruling at 1, 12-14. Specifically, MJB explained that each of the products subject to its scope request is "designed for use in 'single or double exterior doors.'" *See* Door Thresholds Scope Ruling at 13. Columbia stated that the door thresholds at issue are designed to fit standard door sizes in the United States, *i.e.*, they must work in tandem with other components to be functional. *See id.* at 13-14. This information further corroborated the substantial amount of evidence on the record of this proceeding discussed above demonstrating

that Worldwide's door thresholds are one part of a complete door unit, *i.e.*, a part for a larger final finished product.  Thus, Commerce correctly found that just like the curtain wall units in *Shenyang Yuanda* or door handles in *Meridian* were designed to be part of the final product, a curtain wall or kitchen appliance, respectively, and subassemblies within the meaning of the scope of the Orders, the door thresholds are designed to be attached with other components after importation to produce the completed downstream product, *i.e.*, the complete door unit.  *See* First Remand Results at 25.

2.     **The Record As A Whole Demonstrates that Door Thresholds Do Not Meet the Requirements of the "Finished Merchandise" Exclusion in the Scope of the Orders**

As reflected above, there was substantial record evidence demonstrating both that door thresholds are "subassemblies" within the meaning of the scope of the Orders and not excludable "finished merchandise" and also that these products generally require further finishing and fabrication after importation and prior to use, such that they would also fail to meet the exclusion requirements in this regard.  Defendant-Intervenors acknowledge that the Court held in *Worldwide II* that Commerce erred in relying, at least in part, on the evidence submitted by Defendant-Intervenors with respect to whether door thresholds could qualify for the "finished merchandise" exclusion.  *See Worldwide Door Components, Inc. v. United States*, 537 F. Supp. 3d 1403, 1411-13 (Ct. Int'l Trade 2021) ("*Worldwide II*").  The Court found that this evidence referred generally to thresholds and were not directed to the issue of whether Worldwide's thresholds are designed and manufactured as to require cutting or machining prior to use as a component in a door unit or other structure, and that when viewed against the record as a whole, this evidence does not constitute substantial evidence in support of a conclusion or inference that Worldwide's products are so

designed and manufactured.  *See id.*  However, Defendant-Intervenors request that the Court reevaluate its decision.

The information provided by Defendant-Intervenors describing the exact type of product at issue is relevant evidence that Commerce, as the fact-finder, properly considered in weighing the entire record evidence and finding that Worldwide's products do not meet the "finished merchandise" exclusion requirements.  *See* Defendant-Intervenors' Comments on Draft Remand Results at 12-15.  Substantial evidence is "more than a mere scintilla," but "less than the weight of the evidence."  *Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004) (internal quotation marks and citations omitted).  It is such evidence as a reasonable mind would accept as sufficient to support a conclusion.  *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938).  The fact that there may be "a possibility of drawing two inconsistent conclusions from the evidence does not preclude the agency's finding from being supported by substantial evidence." *Jacobi Carbons AB v. United States*, 222 F. Supp. 3d 1159, 1168 (Ct. Int'l Trade 2017). Defendant-Intervenors submit that a conclusion otherwise would have perverse consequences for Commerce's proceedings.  This would create an incentive for parties seeking to avoid AD/CVD duties to provide limited information in requesting scope exclusions, knowing that the agency will unfairly discount relevant evidence submitted by other parties, solely on the basis that the other parties may not have access to certain product information only available to the producer or importer of the merchandise for which an exclusion is being requested.

Furthermore, in addition to the evidence discussed above, during the underlying proceeding, Defendant-Intervenors also noted that Endura had lost customers to Worldwide, and for certain thresholds that Endura sold to these customers, it knew that those thresholds would be cut to size and further customized by these customers prior to installing the threshold in the door

BUSINESS PROPRIETARY INFORMATION<br>HAS BEEN DELETED

unit to be sold to contractors.  Defendant-Intervenors' Jan. 18, 2018 Letter at 11, Exhibit 3.

[

].  *Id.*

Commerce did not address this aspect of Defendant-Intervenors' comments on the draft second remand redetermination.  *See* Defendant-Intervenors' Comments on Draft Remand Results at 14; *see generally* Second Remand Results.

In addition, Defendant-Intervenors submit that a conclusion that simply because merchandise does not require "cutting or machining," it is "finished merchandise" within the meaning of these Orders disregards additional requirements in the exclusion language.  The scope language specifies that the merchandise that may be excluded pursuant to this exclusion is "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels."  AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654.  As demonstrated above, door thresholds are "subassemblies," "partially assembled merchandise" or "intermediate products," and are not "finished" or "fully and permanently assembled" or "completed" at the time of entry, and, thus, do not meet the "finished goods" exclusion requirements.

Indeed, in the final results of the second remand, Commerce explained that whether or not the door thresholds undergo further cutting or fabrication was not central to its original analysis finding the thresholds to be subassemblies.  *See* Second Remand Results at 14-15.  Rather, the central question was whether they are intermediate products that require further incorporation of other components to form a downstream finished product.  *See id.* at 15.  In addition, in responding

to the Court's holding in *Worldwide II* that Commerce misinterpreted the scope language in concluding that the door thresholds are not "finished merchandise" because certain "finished merchandise" exemplars are also designed to become part of a larger whole, the agency explained that it did in fact previously distinguish door thresholds from the listed exemplars. *See Worldwide II*, 537 F. Supp. 3d at 1413-14; Second Remand Results at 15-16. Specifically, Commerce's analysis identified the fact that door thresholds are specifically identified as an exemplar of in-scope subject merchandise in the scope language, while items such as doors with glass or vinyl are identified as exemplars of excluded "finished merchandise." *See* Second Remand Results at 15. In addition, Commerce explained its finding that a door threshold "may be described as a part for a door, while the finished merchandise exclusion expressly covers finished 'doors with glass or vinyl.'" *See* Second Remand Results at 15-16. Defendant-Intervenors submit that the exemplars of "finished merchandise" specified in the scope language are defined by the scope as in and of themselves finished merchandise, and there is no need to further analyze whether the enumerated products work in conjunction with other products. *See* Defendant-Intervenors' Comments on Draft Remand Results at 8. Commerce, as the fact-finder, properly found door thresholds to be distinguishable from the "finished merchandise" exemplars and, instead, to be intermediary products later incorporated into a finished downstream product. *See* Second Remand Results at 16. In addition to Commerce's analysis in the Second Remand Results, Defendant-Intervenors note that the scope language also specifies that subject merchandise may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to door frames, in addition to other exemplars. *See* Door Thresholds Scope Ruling at 6. As Worldwide confirmed, its door thresholds are installed within a door frame or residential or commercial building. *See* First Remand Results at 23. Door thresholds are

manufactured for use in exterior door assemblies and comprise the bottom portion of a door unit and a finished door unit is comprised of a door threshold, the remaining three door frame parts, door panel, hinges, weatherstripping etc.  *See* Defendant-Intervenors' Nov. 17, 2017 Letter at Exhibit 1; Defendant-Intervenors' Sept. 4, 2018 Letter at Exhibit 1.

### 3.      Conclusion

For the reasons discussed above and in Defendant-Intervenors' prior submissions, Commerce's original finding that Worldwide's products are "subassemblies" within the meaning of the scope of the Orders and not excludable as "finished merchandise" was correct. Acknowledging that it was done under protest, Commerce decision to reverse itself is contrary to the record evidence and the scope language and is unreasonable.  Defendant-Intervenors submit that Commerce's determination that the door thresholds meet the requirements of the "finished merchandise" exclusion is, thus, unsupported by substantial evidence and not in accordance with law.  Accordingly, Defendant-Intervenors request that the Court remand the decision to Commerce for reconsideration.

### C.      <u>Commerce's Second Remand Results Conflict With A Recent Decision by This Court</u>

Defendant-Intervenors also submit that Commerce's conclusion, under respectful protest, that Worldwide's door thresholds are excludable "finished merchandise" conflicts with a recent decision by this Court upholding Commerce's scope ruling finding certain products to be "subassemblies" of "finished merchandise" and not excludable as "finished merchandise"

Ct. No. 19-00012                                          NON-CONFIDENTIAL VERSION

themselves.[4]  *See China Custom Mfg., Inc. v. United States*, No. 20-00121, slip op. 21-163 (Ct.

Int'l Trade Dec. 6, 2021) ("Slip Op. 21-163").[5]

Specifically, in *China Custom Manufacturing, Inc.*, this Court upheld Commerce's

determination that certain solar mounts are within the scope of the Orders, based on the agency's

finding that the mounts are intermediary products that require incorporation into a downstream

product to function and meet the definition of a "subassembly."  *See id.* at 8, 24-25.  The

merchandise at issue were certain solar panel mounts used with other parts in a downstream

structure, the "EcoFasten Rock-It System 3.0," to mount solar panels on a roof.  *See id.* at 3.  The

solar mounts consisted of aluminum extrusion components fastened together with non-aluminum

components, *see id.*, and were described as fully and permanently assembled and complete at the

time of entry and ready for installation into the solar panel mounting system.  *See id.* at 8-9.

The Court recognized Commerce's reevaluation of the "subassemblies" provision and the

"finished merchandise" exclusion in the scope of the Orders, pursuant to the Federal Circuit's

opinions in *Shenyang Yuanda Aluminum Industry Engineering Co. v. United States*, 776 F.3d 1351

(Fed. Cir. 2015) and *Shenyang Yuanda II*, as well as the Meridian proceedings.  *See* Slip Op. 21-

163 at 18-23.  Ultimately, the Court held that Commerce correctly applied the litany of Federal

Circuit precedents interpreting the scope of the Orders to the solar mounts at issue and, thus,

substantial evidence supports Commerce's determination.  *See id.* at 22-23.  Specifically, the Court

found that:

> In response to the Federal Circuit's holdings, Commerce appropriately modified its
> position on what constitutes finished merchandise for purposes of the exclusion.

---

[4]      This decision was issued after the deadline for parties to comment on Commerce's draft
second remand results.

[5]      Defendant-Intervenors note that the plaintiffs in this action have filed an appeal of this
decision with the Federal Circuit.

> As Commerce correctly found here, a subassembly cannot qualify as finished merchandise.  *See Shenyang*, 776 F.3d at 1358-59; *Meridian*, 2020 WL 1672840, at *2; J.A. at 1005-06.  A subassembly is a part for a final finished good intended to become part of a larger whole.  *Meridian*, 2020 WL 1672840, at *2.  As China Custom Manufacturing noted in its Supplemental Questionnaire responses, the solar mounts require "other components with which the mounts and the solar panels are used to form the solar panel mounting system," *i.e.*, the finished merchandise. J.A. at 1202.  The solar mounts themselves are not finished merchandise but rather a part or subassembly of the finished merchandise – the solar panel mounting system – and as such do not qualify as finished merchandise excluded from the scope of the Orders.  *Accord Shenyang*, 776 F.3d at 1358-59; *Meridian*, 2020 WL 1672840, at *2.

*See id.* at 24-25.

Worldwide's door thresholds are meaningfully similar to the solar mounts discussed above and are designed to be attached with other components after importation to produce the completed downstream product, *i.e.*, the complete door unit.  Much like the solar mounts, door thresholds constitute "subassemblies" within the meaning of the scope of the Orders and cannot be excluded as "finished merchandise."

Ct. No. 19-00012                                    NON-CONFIDENTIAL VERSION

## III.    <u>CONCLUSION</u>

For the reasons discussed above, Defendant-Intervenors respectfully submit that the Court

should remand for reconsideration Commerce's determination in the Second Remand Results that

Worldwide's products are excluded from the scope of the Orders as "finished merchandise."

                                        Respectfully submitted,

                                        */s/ Robert E. DeFrancesco, III*
                                        Alan H. Price, Esq.
                                        Robert E. DeFrancesco, III, Esq.
                                        Elizabeth S. Lee, Esq.

                                        WILEY REIN LLP
                                        2050 M Street, NW
                                        Washington, DC 20036
                                        (202) 719-7000

                                        *Counsel for Aluminum Extrusions Fair*
                                        *Trade Committee and Endura Products, Inc.*

Dated: January 12, 2022

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(l), the undersigned certifies that these comments comply with the word limitation requirement.   The word count for Defendant-Intervenors' Comments on Final Results of Second Redetermination Pursuant to Court Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 5,331 words.

    /s/ Robert E. DeFrancesco, lII
(Signature of Attorney)

    Robert E. DeFrancesco, III
(Name of Attorney)

Aluminum Extrusions Fair Trade Committee and Endura Products, Inc.
(Representative Of)

January 12, 2022
(Date)