Slip Op. 22-91

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **WORLDWIDE DOOR COMPONENTS, INC.,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | **Before:  Timothy C. Stanceu, Judge** |
| Defendant, | **Court No. 19-00012** |
| and | |
| **ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE AND ENDURA PRODUCTS, INC.,** | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[Ordering a remand to the issuing agency of a determination that is not in a form the court could sustain upon judicial review]

Dated: August 10, 2022

*John M. Foote*, Kelley Drye & Warren LLP, of Washington, DC, for plaintiff.

*Aimee Lee*, Assistant Director, Civil Division, U.S. Department of Justice, of New York, NY, for defendant.  With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Tara K. Hogan*, Assistant Director.  Of counsel on the brief was *Nikki Kalbing*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

*Robert E. DeFrancesco, III*, Wiley Rein LLP, of Washington, DC, for defendant-intervenors.  With him on the brief were *Alan H. Price* and *Elizabeth S. Lee*.

Stanceu, Judge:  Plaintiff Worldwide Door Components, Inc. ("Worldwide")

brought this action to contest a decision (the "Scope Ruling") by the International Trade

Administration, U.S. Department of Commerce ("Commerce" or the "Department") on

its imported "door thresholds," each of which is an assembly containing an aluminum

extrusion among various other components.  In this litigation, Commerce previously

took the position that an aluminum extrusion component within each door threshold is

within the scope of antidumping and countervailing duty orders on aluminum

extrusions from the People's Republic of China (the "Orders").

Before the court is the Department's most recent decision ("Second Remand

Redetermination"), which Commerce submitted in response to the court's opinion and

order in *Worldwide Door Components, Inc. v. United States*, 45 CIT __, 537 F. Supp. 3d 1403

(2021) ("*Worldwide II*").  In an effort to respond to the court's order while changing its

position only under protest, Commerce stated in the Second Remand Redetermination

that the aluminum extrusion components within the imported door thresholds are not

subject to the Orders.

Plaintiff has commented in favor of the Second Remand Redetermination.

Defendant-intervenors, the Aluminum Extrusions Fair Trade Committee and Endura

Products, Inc., a U.S. producer of aluminum extrusions, have commented in opposition.

The court issues another remand order to Commerce.  The Department's latest

determination is not itself a new scope ruling in a form the court could sustain.  Instead,

Commerce informs the court that if the court were to sustain the Second Remand

Redetermination, Commerce would issue a new scope ruling accordingly.  Under this

proposal, Commerce would issue its final ruling outside of the court's direct review.

Also, the agency determination before the court misconstrues the court's opinion in

*Worldwide II* in some respects.  The court orders Commerce to submit for the court's

consideration, on an expedited basis, a new determination that would go into effect if

sustained upon judicial review.

## I. BACKGROUND

Background on this litigation is presented in the court's previous opinions and is

summarized and supplemented herein.  *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1405–06;

*Worldwide Door Components, Inc. v. United States*, 44 CIT __, __, 466 F. Supp. 3d 1370,

1372–73 (2020) ("*Worldwide I*").

The decision contested by plaintiff in this litigation is *Antidumping and*

*Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China:*

*Final Scope Rulings on Worldwide Door Components Inc., MJB Wood Group, Inc., and*

*Columbia Aluminum Products Door Thresholds*, P.R. Doc. 39 (Int'l Trade Admin. Dec. 19,

2018) ("*Scope Ruling*").  The Scope Ruling construed the scope of *Aluminum Extrusions*

*from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Int'l

Trade Admin. May 26, 2011) ("*AD Order*"), and *Aluminum Extrusions From the People's*

*Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade Admin.

May 26, 2011) ("*CVD Order*").

   The court remanded the Scope Ruling to Commerce in *Worldwide I*, ruling that

Commerce had misinterpreted the scope language of the Orders in two respects and,

finding the Department's response to the court's opinion and order in *Worldwide I* (the

"First Remand Redetermination"), *Final Results of Redetermination Pursuant to Court*

*Remand* (Dec. 23, 2020), ECF No. 64-1 ("*First Remand Redetermination*"), flawed as well,

issued a second remand order in *Worldwide II*.

   In response to the court's order in *Worldwide II*, Commerce filed the Second

Remand Redetermination with the court on December 13, 2021.  *Final Results of*

*Redetermination Pursuant to Ct. Remand*, ECF No. 85–1 ("*Second Remand Redetermination*").

Plaintiff submitted comments in support on January 12, 2022.  Plaintiff's Comments in

Supp. of Remand Redetermination, ECF No. 87.  Defendant-intervenors filed their

comments in opposition on January 12, 2022.  Def.-Intervenors' Comments on Final

Results of Second Redetermination Pursuant to Ct. Remand, ECF Nos. 89 (conf.), 90

(public).  Defendant replied to the comments on February 11, 2022.  Def.'s Resp. to

Comments on Second Remand Redetermination, ECF No. 95.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs

Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions

brought under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a.[1]

Among the decisions that may be contested according to section 516A is a

determination of "whether a particular type of merchandise is within the class or kind

of merchandise described in an . . . antidumping or countervailing duty order." *Id*.

§ 1516a(a)(2)(B)(vi).  In reviewing the Scope Ruling, the court must set aside any

determination, finding, or conclusion found "to be unsupported by substantial evidence

on the record, or otherwise not in accordance with law." *Id*. § 1516a(b)(1)(B)(i).

### B. The Court's Decisions in *Worldwide I* and *Worldwide II*

The Orders apply generally to "aluminum extrusions," which are defined in the

Orders as "shapes and forms, produced by an extrusion process." *AD Order*, 76 Fed.

Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653.  As the court's previous decisions have

recognized, the door thresholds at issue in this litigation are not themselves aluminum

extrusions.  Nevertheless, the Orders contain a provision (the "subassemblies"

---

[1] Citations to the United States Code and to the Code of Federal Regulations are to the 2018 editions.

provision) that enlarges the scope of the Orders to include aluminum extrusion components present in certain imported "partially assembled merchandise."  *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  Another provision in the scope language of the Orders, the "finished merchandise exclusion," excludes from the scope of the Orders certain assembled and completed merchandise containing aluminum extrusions as parts.  *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

At issue in this litigation are eighteen models of imported door thresholds, each of which is not itself an aluminum extrusion but is instead an assembly of various components, including polyvinyl chloride, other plastics, wood, or steel.  *Worldwide I*, 44 CIT at__, 466 F. Supp. 3d at 1372–73.  One of those components in each door threshold is fabricated from a single piece of extruded aluminum and, were it imported separately, would be described by the scope language of the Orders.

In *Worldwide I*, the court held that the contested Scope Ruling misinterpreted the scope language of the Orders in three respects.  The Scope Ruling relied on a sentence in the scope language, "[s]ubject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture."  *AD Order*, 76 Fed. Reg. at 30,650–51; *CVD Order* 76 Fed. Reg. at 30,654.

From this sentence, the Scope Ruling concluded that ". . . the aluminum extruded components of . . . Worldwide's . . . door thresholds may be described as parts for final finished products, *i.e.*, parts for doors, which are assembled after importation (with additional components) to create the final finished product, and otherwise meet the definition of in-scope merchandise." *Scope Ruling* at 33. Rejecting this reasoning, *Worldwide I* stated that "[t]he Scope Ruling erred in relying on that sentence from the scope language, which is inapplicable to the issues presented by Worldwide's imported products." *Worldwide I*, 44 CIT at __, 466 F. Supp. 3d. at 1374. The court noted that Commerce failed to recognize that the subject of the quoted sentence was "[s]ubject *aluminum extrusions*," which Worldwide's door thresholds, at the time of importation, were not. *Id.*, 44 CIT at __, 466 F. Supp. 3d. at 1374–75 (quoting *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,654 (emphasis added)). "The sentence refers to the way that goods may be described 'at the time of importation,' but according to the uncontested facts, Worldwide's door thresholds are not 'aluminum extrusions' at the time of importation; rather, they are door thresholds that contain an aluminum extrusion as a component in an assembly." *Id.*, 44 CIT at __, 466 F. Supp. 3d. at 1375. With respect to the scope language sentence at issue, which contains the words "may be described at the time of importation as parts for final finished products that are assembled after importation," *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg.

at 30,654, the court also reasoned that the aluminum extrusion component in each door

threshold is not itself the imported article and that it had become part of the imported,

assembled good prior to, not after, importation.  *Worldwide I*, 44 CIT at __, 466 F. Supp.

3d. at 1375.

*Worldwide I* ruled that Commerce also erred in misinterpreting the following

sentence from the scope language in the Orders: "'Subject extrusions may be identified

with reference to their end use, such as fence posts, electrical conduits, *door

thresholds* . . . .'"  *Id.*, 44 CIT at __, 466 F. Supp. 3d. at 1376 (quoting *AD Order*, 76 Fed.

Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654 (emphases added)).  Mentioning that

"the plain language of the scope of the *Orders* specifies that 'door thresholds' are

included within the scope 'if they otherwise meet the scope definition . . .,'" the Scope

Ruling erroneously concluded that "[i]n light of the above, we find that . . . Worldwide's

. . . door thresholds are within the scope of the *Orders*."  *Scope Ruling* at 34.  As

*Worldwide I* pointed out, Commerce overlooked that the subject of this sentence in the

Orders also is "[s]ubject extrusions," which Worldwide's imported door thresholds are

not.  *Worldwide I*, 44 CIT at __, 470 F. Supp. 3d. at 1376 (quoting *AD Order*, 76 Fed. Reg.

at 30,650; *CVD Order*, 76 Fed. Reg. at 30,654 (emphasis added)).  The court reasoned that

these goods "are not, in the words of the scope language, 'aluminum extrusions which

are shapes and forms, produced by an extrusion process,'" and they do not, therefore,

otherwise meet the scope definition for an aluminum extrusion.  *Id*. (quoting *AD Order*,

76 Fed. Reg. at 30,650–51; *CVD Order*, 76 Fed. Reg. at 30,653–54).

The court identified a third error in the interpretation Commerce applied to the

scope language, which was to refuse to consider whether Worldwide's door thresholds

were excluded from the scope of the Orders under the "finished merchandise

exclusion."  *Id*.  This express exclusion from the scope applies to "finished merchandise

containing aluminum extrusions as parts that are fully and permanently assembled and

completed at the time of entry, such as finished windows with glass, doors with glass or

vinyl, picture frames with glass pane and backing material, and solar panels."

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

Commerce concluded in the Scope Ruling that "the express inclusion of 'door

thresholds' within the scope of the *Orders* (regardless of whether the door thresholds

are ready for use at the time of importation) renders the reliance of Worldwide . . . upon

the finished merchandise exclusion inapposite."  *Scope Ruling* at 35–36.  *Worldwide I*

rejected the Department's reasoning because it misinterpreted the scope language of the

Orders.  "The scope language does not expressly include all door thresholds in which

there is an extruded aluminum component.  Instead, as the court has discussed, the

inclusion of 'door thresholds' in the scope language as an exemplar is confined to door

thresholds that *are* aluminum extrusions." *Worldwide I*, 44 CIT at __, 470 F. Supp. 3d. at

1376 (citing *AD Order,* 76 Fed. Reg. at 30,651; *CVD Order,* 76 Fed. Reg. at 30,654).

*Worldwide I* concluded, further, that Commerce "erred in reasoning that 'finding

door thresholds excluded under the finished merchandise exclusion would render the

express inclusion of "door thresholds" meaningless.'" *Id.,* 44 CIT at __, 470 F. Supp. 3d.

at 1376 (quoting *Scope Ruling* at 36). As the court recognized, "[d]oor thresholds that are

fabricated from aluminum extrusions are 'extrusions' for purposes of the scope

language and are expressly included in the scope by operation of the reference to 'door

thresholds'; other door thresholds, which are not themselves 'extrusions' for purposes

of the Orders, are not." *Id.,* 44 CIT at __, 466 F. Supp. 3d. at 1376–77. *Worldwide I* added

that:

> Rather than rendering the express inclusion of door thresholds
> meaningless, excluding the assembled goods at issue from the Orders
> according to the finished merchandise exclusion would have no effect at
> all on the express inclusion of door thresholds, for a straightforward
> reason: a door threshold that is fabricated from an aluminum extrusion
> could never qualify under the finished merchandise exclusion in the first
> place because the finished merchandise exclusion applies only to
> assembled goods.

*Id.,* 44 CIT at __, 466 F. Supp. 3d. at 1377 (citing *AD Order,* 76 Fed. Reg. at 30,651; *CVD*

*Order,* 76 Fed. Reg. at 30,654).

*Worldwide I* also rejected the Department's conclusion that the Scope Ruling was

supported by sources described in its regulation, 19 C.F.R. § 351.225(k)(1) (providing

that the Secretary of Commerce may take into account "[t]he descriptions of the

merchandise contained in the petition . . . ; . . . the initial investigation . . . ; . . .

[d]eterminations of the Secretary, including prior scope rulings . . . ; and

[d]eterminations of the [U.S. International Trade] Commission . . . .").  The court

explained that the Department's reliance on the petition, certain materials pertinent to

the investigation, and the injury determination of the U.S. International Trade

Commission was misplaced, Commerce again having mistaken references to door

thresholds that are aluminum extrusions for references to assemblies containing an

aluminum extrusion as a component.  *Worldwide I*, 44 CIT at __, 466 F. Supp. 3d. at

1376–78.

    In light of the multiple errors the court identified, *Worldwide I* ordered Commerce

to reconsider the Scope Ruling and to give "full and fair" consideration to the issue of

whether the finished merchandise exclusion applies to Worldwide's door thresholds,

"upon making findings that are supported by substantial record evidence."  *Id*., 44 CIT

at __, 466 F. Supp. 3d. at 1380.

    In response to the court's opinion and order in *Worldwide I*, Commerce submitted

the First Remand Redetermination on December 23, 2020.  *See First Remand

Redetermination*.  In it, Commerce disagreed with the court that the finished

merchandise exclusion was relevant to the Department's analysis but addressed, under

Court No. 19-00012                                                                  Page 12

protest, the issue of whether this exclusion applied to Worldwide's door thresholds.

Commerce concluded that it did not.

The Department's analysis in the First Remand Redetermination began with

findings of fact that are not contested in this case.  Commerce found that Worldwide's

door thresholds are produced "for installation within a door frame or residential or

commercial building."  *Worldwide II*, 45 CIT at __, 537 F. Supp. 3d. at 1411 (quoting *First*

*Remand Redetermination* at 23).  Commerce reached the related finding that

"'Worldwide's door thresholds do not function on their own, but rather are

incorporated into a larger downstream product,' to which Commerce also referred as a

'completed door unit.'"  *Id*., 45 CIT at __, 537 F. Supp. 3d. at 1411 (internal citations

omitted) (quoting *First Remand Redetermination* at 36).  In the First Remand

Redetermination, Commerce described that product as one that "'requires additional

parts, such as door jambs, a door panel, glass, hinges, weatherstripping, and other

hardware parts.'"  *Id*., 45 CIT at __, 537 F. Supp. 3d at 1414 (citing *First Remand*

*Redetermination* at 36).

Based on its factual findings on the applications for which Worldwide's door

thresholds are produced, Commerce reached two conclusions of law in the First

Remand Redetermination.  Commerce concluded, first, that these products do not

qualify for the finished merchandise exclusion because they are "partially assembled

merchandise" and "intermediate products" for purposes of the subassemblies provision

in the Orders.  *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1411 (citing *First Remand*

*Redetermination* at 23).  The subassemblies provision states that "[t]he scope includes the

aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to

form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the

finished goods 'kit' defined further below."[2]  *AD Order*, 76 Fed. Reg. at 30,651; *CVD*

*Order*, 76 Fed. Reg. at 30,654.  Second, Commerce concluded that because they were

described by the subassemblies provision, Worldwide's door thresholds could not

qualify for the finished merchandise exclusion.  According to the First Remand

Redetermination, "[a] subassembly is merchandise which is designed for the sole

purpose of becoming part of a larger whole"; Commerce concluded that each of

Worldwide's door thresholds, which "must work in tandem with other components to

be functional" and is "a component of a larger downstream product," cannot, for those

---

[2] The reference to the "kit" is a reference to the "finished goods kit" exclusion, under which the antidumping and countervailing duty orders exclude an imported good in unassembled form that includes all the parts required for assembly of a final finished good.  *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650, 30,651 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653, 30,654 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").  Because the door thresholds at issue are imported in fully assembled, not disassembled form, this exclusion does not apply.

reasons, qualify for the finished merchandise exclusion.  *First Remand Redetermination* at

23–24 (citation omitted).

In *Worldwide II*, the court rejected certain of the reasoning by which Commerce

supported its ultimate conclusion in the First Remand Redetermination that the

aluminum extrusion components within the door thresholds were subject to the Orders.

"Under the Department's analysis, only goods that are not 'designed for the sole

purpose of becoming part of a larger whole'. . . can satisfy the finished merchandise

exclusion, but this rationale is contrary to the terms by which that exclusion is

expressed in the scope language."  *Worldwide II*, 45 CIT at __, 537 F. Supp. 3d. at 1414

(quoting *First Remand Redetermination* at 24).  The court pointed to two of the exemplars

of products the scope language listed as qualifying for the finished merchandise

exclusion, finished windows with glass and doors with glass or vinyl, as products that

"*are* specifically designed for the sole purpose of becoming part of a larger whole."  *Id*.

*Worldwide II* addressed in particular the "doors with glass or vinyl" exemplar:

> The Remand Redetermination appears to overlook a critical
> distinction: the exemplar in the finished merchandise exclusion
> explicitly refers to "*doors* with glass or vinyl," not "finished door
> units" or "completed door units" consisting of assembled
> combinations of a door, a door frame, and other parts such as door
> jambs, weatherstripping, and necessary hardware.  A "door"
> assembled from one or more aluminum extrusions and components
> of vinyl or glass[] is itself only a component of what Commerce
> itself described as a finished or completed door unit.  Like one of

> Worldwide's door thresholds, it is "designed for the sole purpose
> of becoming part of a larger whole."

*Id.* (quoting *First Remand Redetermination* at 24).  The court stated that "[t]he

Department's role in a scope ruling is to interpret, not modify, the scope language, and

it may not interpret an order contrary to its terms."  *Id.* (citing *Duferco Steel, Inc. v.*

*United States*, 296 F.3d 1087, 1095 (Fed. Cir. 2002)).  "Even the products Commerce itself

considered to satisfy the finished merchandise exclusion, i.e., a complete, assembled

door unit, and a 'final finished door with glass,' . . . do not 'function on their own,' . . .

and cannot function until incorporated into a wall or other part of a building."  *Id.*  The

court concluded that "[t]he [First] Remand Redetermination does not offer a plausible

explanation of why the articles mentioned in the 'door' and 'window' exemplars of the

finished merchandise exclusion satisfy that exclusion but that Worldwide's door

thresholds . . . do not."  *Id.*

In the First Remand Redetermination, Commerce, relying solely on statements by

defendant-intervenors that did not pertain specifically to Worldwide's door thresholds,

and despite certain record evidence that *did* pertain to Worldwide's products, inferred

from these statements, but did not expressly find, "that the particular door thresholds at

issue in this litigation . . . are so designed and manufactured as to require cutting or

machining prior to assembly of a door unit or other structure."  *Worldwide II*, 45 CIT at

__, 537 F. Supp. 3d at 1412.  The court attached significance to whether Worldwide's

imported door thresholds required cutting or machining prior to use because that issue

"is directly relevant to the applicability of the finished merchandise exclusion, which

pertains to 'finished merchandise containing aluminum extrusions as parts that are

fully and permanently assembled *and completed* at the time of entry.'"  *Id.*, 45 CIT at __,

537 F. Supp. 3d at 1413 (quoting *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed.

Reg. at 30,654 (emphasis added)).  The court directed Commerce to reach "a finding

from the record evidence that the door thresholds at issue in this case either are, or are

not, so designed and produced as to require cutting or machining prior to use."  *Id.*, 45

CIT at __, 537 F. Supp. 3d at 1414.

### C.  The Second Remand Redetermination

The Second Remand Redetermination is not a decision in a form the court may

sustain.  The concluding paragraph of the Second Remand Redetermination is as

follows:

> As a result of this redetermination, we have determined, under
> protest, that Worldwide's door thresholds are outside the scope of the
> *Orders* pursuant to the finished merchandise exclusion.  Should the court
> sustain these Final Results of Redetermination, we will issue a revised
> scope ruling accordingly.

*Second Remand Redetermination* at 16.  The Department's proposed resolution seeks court

approval for a decision that, unlike the agency determination contested in this litigation,

is not a scope ruling or determination but is merely preliminary to such a decision.

Because it is not the actual scope ruling or determination Commerce plans to issue, the

Second Remand Redetermination would not be self-effectuating should the court

sustain it, and the agency decision that would follow if it were sustained would escape

direct judicial review.  In this circumstance, the court finds the Department's proposed

resolution of this litigation unsatisfactory.  Not only would it deny the court the

opportunity to review the agency's actual decision on remand, it also would not allow

the parties to comment on that decision before the court reviews it.  Moreover, the court

must rule on an agency decision, including one submitted in response to court order, by

considering the decision according to the reasoning the agency puts forth.  *See Michigan*

*v. EPA*, 576 U.S. 743, 758 (2015) (It is a "foundational principle of administrative law"

that judicial review of agency action is limited to "the grounds that the agency invoked

when it took the action." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943))).  The

proposed resolution Commerce has offered does not allow the court to perform its

essential judicial review function, and the court, therefore, rejects it.  The court directs

Commerce to issue a third remand redetermination that, like the agency determination

contested in this litigation, is a scope ruling or determination for the court's review, and

it must be in a form that would go into effect if sustained upon judicial review.

        The Second Remand Redetermination is flawed in presenting no reasoning for

ruling that the door thresholds are outside the scope of the Orders other than its

incorrect conclusion that the court ordered Commerce to do so.  The Second Remand

Redetermination misinterprets *Worldwide II* in this respect as well as others.  Commerce

devoted most of the substantive discussion in the Second Remand Redetermination to

its disagreements with certain of the issues the court decided previously.  Then, in the

concluding paragraph of its analysis, Commerce stated that:

> In any event, although Commerce respectfully disagrees with the
> Court's interpretation of the scope language, consistent with the court's
> opinion and analysis, we continue to find [as Commerce did in draft
> results it issued to the parties] in these Final Results of Redetermination
> that Worldwide's door thresholds are finished merchandise excluded
> from the scope of the *Orders*, under protest.

*Second Remand Redetermination* at 16.

In expressing its disagreements with the court, Commerce stated, erroneously,

that "in *Worldwide II*, the Court found unpersuasive Commerce's determination that

Worldwide's door thresholds were subassemblies which must be further incorporated

into a larger downstream product (*e.g.*, a door unit or door frame)."  *Id.* at 11.  The

Second Remand Redetermination stated, further, that "the Court also held that

Commerce misinterpreted the scope language in concluding that, because Worldwide's

door thresholds were intermediate products, rather than final finished goods in and of

themselves, the finished merchandise exclusion was inapplicable."  *Id*. (footnote

omitted).  It then concluded that "[t]hus, the Court disagreed with Commerce's finding

that Worldwide's door thresholds were subassemblies covered by the scope of the

*Orders* and not excluded under the finished merchandise exclusion." *Id*. The

Department's interpretation of *Worldwide II* errs in three respects.

First, the court did not decide whether Worldwide's door thresholds are

"subassemblies" within the meaning of the subassemblies provision in the scope

language of the Orders.  Had the court actually decided—as Commerce apparently

believed the court had—that the subassemblies provision in the scope language did *not*

describe Worldwide's imported door thresholds, the court would not have proceeded

to address the issue of whether the finished merchandise exclusion applied to those

goods.  For if Worldwide's door thresholds are *not* described by the subassemblies

provision, there can be no reason to decide whether the finished merchandise exclusion

applies.  If the scope language had not contained the subassemblies provision, the only

imported products that could have been held to fall within the scope of the Orders are

those that may be described at the time of importation as "aluminum extrusions"

within the definition of that term as set forth in the scope language of the Orders, which

expressly defines aluminum extrusions as "shapes or forms, produced by an extrusion

process."  *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653.  It is

uncontested that Worldwide's door thresholds are imported in assembled form with

non-aluminum components.  Thus, in the form in which they are imported,

Worldwide's door thresholds—as opposed to a single component within each—cannot

conform to the scope definition of "extrusions," and Commerce has offered no plausible

reasoning under which they could be held to do so.

Second, the court did not rule that Commerce incorrectly found that the door

thresholds are designed to be incorporated into a larger downstream product, which

they plainly are. Instead, as the court discussed previously, the *Worldwide II* opinion

took issue with the Department's failing to recognize that two of the exemplars in the

finished merchandise exclusion also are goods designed for incorporation into a

downstream product or structure. *Worldwide II*, 45 CIT at __, 537 F. Supp. 3d at 1414.

Third, the court did not decide whether the finished merchandise exclusion

applied to Worldwide's door thresholds. To the contrary, the court remanded the First

Remand Redetermination so that Commerce could reach its own decision on that issue,

after making an actual finding on the issue of whether these products are so designed

and manufactured as to require cutting and machining prior to incorporation into

another structure.

On the latter issue, the Second Remand Redetermination stated, first, that it

considered this issue irrelevant when it issued the Scope Ruling, informing the court

that ". . . the fact that the door thresholds themselves may not have undergone further

cutting or fabrication was not central to Commerce's original analysis finding that the

door thresholds were subassemblies based on the further assembly and incorporation of

other components/parts to form downstream finished merchandise." *Second Remand*

*Redetermination* at 14–15 (citing *Scope Ruling* at 33, 37).  Then, alluding to the reasoning

underlying the Department's decision in the First Remand Redetermination, the Second

Remand Redetermination stated that "[t]he central question Commerce analyzed was

not whether record evidence indicates the door thresholds themselves may undergo

further cutting or fabrication, but whether they are intermediate products that require

further incorporation of other components to form a downstream finished product."  *Id.*

at 15 (citing *First Remand Redetermination* at 25).  The Second Remand Redetermination

did not return to the factual issue the court identified.  It is reasonable to presume that

had Commerce believed that substantial evidence supported a finding that

Worldwide's door thresholds required cutting or fabrication prior to use, it would have

so stated in the Second Remand Redetermination.[3]

_____

[3] Because Commerce did not actually state a finding of fact that Worldwide's door thresholds required such modification prior to use, the court was not in a position in *Worldwide II* to conclude that Commerce had done so.  The court considered it appropriate, therefore, to direct Commerce to resolve the factual dispute.

In comments on the Second Remand Redetermination, defendant-intervenors argue that Commerce again should have concluded that the finished merchandise exclusion does not apply and that the aluminum extrusion components in each of Worldwide's door thresholds are subject to the Orders.  Among their arguments is that they "submitted information demonstrating that door thresholds are highly customizable and generally require further finishing and fabrication before assembly (continued . . .)

### III. Conclusion and Order

The Second Remand Redetermination is unsatisfactory because it is not in a form in which the court could sustain it. Commerce must issue a new determination that decides the issue of whether or not the aluminum extrusion components in Worldwide's door thresholds are within the scope of the Orders. It must be consistent with this Opinion and Order and, in particular, must be in a form that would go into effect if sustained upon judicial review.

Therefore, upon consideration of the Second Remand Redetermination and all papers and proceedings had herein, and upon due deliberation, it is hereby

**ORDERED** that the Second Remand Redetermination is remanded to Commerce; it is further

**ORDERED** that Commerce, within 30 days from the date of issuance of this Opinion and Order, shall submit a third redetermination upon remand ("Third Remand Redetermination") that complies with this Opinion and Order; it is further

---

into a finished door unit." Def.-Intervenors' Comments on Final Results of Second Redetermination Pursuant to Ct. Remand 8 (Jan. 12, 2022), ECF Nos. 89 (conf.), 90 (public). Arguing that Commerce reached the correct result in the First Remand Redetermination, defendant-intervenors assert that "[t]he information provided by Defendant-Intervenors *describing the exact type of product at issue* is relevant evidence that Commerce, as the fact-finder, properly considered in weighing the entire record evidence and finding that Worldwide's products do not meet the 'finished merchandise' exclusion requirements." *Id*. at 12 (emphasis added) (citation omitted). Commerce did not indicate agreement with this argument.

Court No. 19-00012                                                      **Page 23**

  **ORDERED** that plaintiff and defendant-intervenors shall have 15 days from the filing of the Third Remand Redetermination in which to submit comments to the court; and it is further

  **ORDERED** that should plaintiff or defendant-intervenors submit comments, defendant shall have 10 days from the date of filing of the last comment to submit a response.

/s/ Timothy C. Stanceu   
Timothy C. Stanceu, Judge

Dated: August 10, 2022
  New York, New York