A-570-967, C-570-968
Remand
Slip Op. 22-91
Scope Inquiry: Worldwide Door Thresholds
**Public Document**
E&C/OVI: MJH

***Worldwide Door Components, Inc., v. United States***
**Court No. 19-00012, Slip. Op. 22-91 (CIT August 10, 2022)**
**Aluminum Extrusions from the People's Republic of China**

# FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

## I. SUMMARY

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the opinion and third remand order of the United States Court of International Trade (CIT or the Court) in *Worldwide Door Components, Inc. v. United States,* Court No. 19-00012, Slip Op. 22-91 (August 10, 2022) (*Worldwide III*). This action arises out of Commerce's Final Scope Ruling that certain door thresholds imported by Worldwide Door Components, Inc. (Worldwide)[1] fall within the scope of the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China (China).[2] On December 23, 2020, pursuant to the CIT's first remand order in *Worldwide I*,[3] Commerce issued its First Final Remand Redetermination, in which Commerce continued to find that Worldwide's door

[1] *See* Memorandum, "Antidumping and Countervailing Duty Order on Aluminum Extrusions from the People's Republic of China: Final Scope Rulings on Worldwide Door Components Inc., MJB Wood Group, Inc. and Columbia Door Thresholds," dated December 19, 2018 (Final Scope Ruling).
[2] *See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 FR 30650 (May 26, 2011) (*Antidumping Duty Order*); and *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order,* 76 FR 30653 (May 26, 2011) (*Countervailing Duty Order*) (collectively, the *Orders*).
[3] *See Worldwide Door Components, Inc. v. United States*, 466 F. Supp. 3d 1370 (CIT 2020) (*Worldwide I*).

thresholds were subassemblies included in the scope of the *Orders* and, therefore, failed to satisfy the requirements for the finished merchandise exclusion.[4]

In *Worldwide II*, the Court determined that Commerce impermissibly based its analysis in the First Final Remand Redetermination on inferences that were contradicted or unsupported by other information on the record.[5]  The CIT directed Commerce to reconsider whether Worldwide's door thresholds required cutting or machining prior to incorporation into another product, and to determine whether Worldwide's door thresholds qualified for the finished merchandise exclusion.[6]  On December 13, 2021, Commerce issued its Second Final Remand Redetermination, in which Commerce determined that Worldwide's door thresholds were excluded from the *Orders* as finished merchandise.[7]

In *Worldwide III*, the CIT held that Commerce's Second Final Remand Redetermination misconstrued aspects of the Court's decision in *Worldwide II* and was not submitted in a form the CIT could sustain upon judicial review.[8]  The CIT, thus, directed Commerce to issue a new determination, in a form that would go into effect if sustained upon judicial review, determining whether the extruded aluminum components of Worldwide's door thresholds are within the scope of the *Orders*.[9]

---

[4] *See Final Results of Redetermination Pursuant to Court Remand, Aluminum Extrusions from the People's Republic of China, Worldwide Door Components, Inc. v. United States*, Court No. 19-00012, Slip. Op. 20-128 (CIT August 27, 2020), dated December 23, 2020 (First Final Remand Redetermination), available at https://access.trade.gov/resources/remands/20-128.pdf.
[5] *See Worldwide Door Components, Inc. v. United States*, 537 F. Supp. 3d 1403, 1404-05, 1408-09 (CIT 2021) (*Worldwide II*).
[6] *Id.* at 1404-05, 1414.
[7] *See Final Results of Redetermination Pursuant to Court Remand, Worldwide Door Components, Inc. v. United States,* Court No. 19-00012, Slip. Op. 21-115 (CIT September 14, 2021), dated December 13, 2021 (Second Final Remand Redetermination), available at https://access.trade.gov/resources/remands/21-115.pdf.
[8] *See Worldwide III* at 3 and 16-21.
[9] *Id.* at 3 and 22.

In these final results, we have continued to find, under respectful protest,[10] in accordance with the Court's holdings, that Worldwide's door thresholds fall outside the scope of the *Orders* based on the finished merchandise exclusion. Consistent with the CIT's conclusions in *Worldwide III*, we have provided further explanation for the basis of that finding on remand. We also clarify that we do not intend to issue a scope ruling or other agency determination subsequent to this Court's review of this remand redetermination. Thus, if the CIT affirms this redetermination, a *Federal Register* notice will be published stating that, consistent with the Court's holdings, Worldwide's door thresholds are excluded from the scope of the *Orders*. Relevant instructions to U.S. Customs and Border Protection (CBP) giving effect to that determination, as appropriate, will also be issued at that time.

## II. SCOPE OF THE *ORDERS*

The merchandise covered by the *Orders* is aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents). Specifically, the subject merchandise made from aluminum alloy with an Aluminum Association series designation commencing with the number 1 contains not less than 99 percent aluminum by weight. The subject merchandise made from aluminum alloy with an Aluminum Association series designation commencing with the number 3 contains manganese as the major alloying element, with manganese accounting for not more than 3.0 percent of total materials by weight. The subject merchandise is made from an aluminum alloy with an

[10] *See Viraj Group v. United States*, 343 F. 3d 1371 (Fed. Cir. 2003). We are issuing this redetermination under protest because, as we explained in the First and Second Final Remand Redeterminations, we respectfully disagree with this Court's interpretation of the scope language and certain Federal Circuit precedent.

Aluminum Association series designation commencing with the number 6 contains magnesium and silicon as the major alloying elements, with magnesium accounting for at least 0.1 percent but not more than 2.0 percent of total materials by weight, and silicon accounting for at least 0.1 percent but not more than 3.0 percent of total materials by weight. The subject aluminum extrusions are properly identified by a four-digit alloy series without either a decimal point or leading letter. Illustrative examples from among the approximately 160 registered alloys that may characterize the subject merchandise are as follows: 1350, 3003, and 6060.

Aluminum extrusions are produced and imported in a wide variety of shapes and forms, including, but not limited to, hollow profiles, other solid profiles, pipes, tubes, bars, and rods.

Aluminum extrusions that are drawn subsequent to extrusion (drawn aluminum) are also included in the scope.

Aluminum extrusions are produced and imported with a variety of finishes (both coatings and surface treatments), and types of fabrication. The types of coatings and treatments applied to subject aluminum extrusions include, but are not limited to, extrusions that are mill finished (i.e., without any coating or further finishing), brushed, buffed, polished, anodized (including brightdip anodized), liquid painted, or powder coated. Aluminum extrusions may also be fabricated, *i.e.*, prepared for assembly. Such operations would include, but are not limited to, extrusions that are cut-to-length, machined, drilled, punched, notched, bent, stretched, knurled, swedged, mitered, chamfered, threaded, and spun. The subject merchandise includes aluminum extrusions that are finished (coated, painted, etc.), fabricated, or any combination thereof.

Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise

meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies, *i.e*., partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below. The scope does not include the non-aluminum extrusion components of subassemblies or subject kits.

Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks (that do not meet the finished heat sink exclusionary language below). Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation.

The following aluminum extrusion products are excluded: aluminum extrusions made from aluminum alloy with an Aluminum Association series designations commencing with the number 2 and containing in excess of 1.5 percent copper by weight; aluminum extrusions made from aluminum alloy with an Aluminum Association series designation commencing with the number 5 and containing in excess of 1.0 percent magnesium by weight; and aluminum extrusions made from aluminum alloy with an Aluminum Association series designation commencing with the number 7 and containing in excess of 2.0 percent zinc by weight.

The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels. The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a "finished goods kit." A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or

fabrication, such as cutting or punching, and is assembled "as is" into a finished product. An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the *Orders* merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusion product.

The scope also excludes aluminum alloy sheet or plates produced by other than the extrusion process, such as aluminum products produced by a method of casting. Cast aluminum products are properly identified by four digits with a decimal point between the third and fourth digit. A letter may also precede the four digits. The following Aluminum Association designations are representative of aluminum alloys for casting: 208.0, 295.0, 308.0, 355.0, C355.0, 356.0, A356.0, A357.0, 360.0, 366.0, 380.0, A380.0, 413.0, 443.0, 514.0, 518.1, and 712.0. The scope also excludes pure, unwrought aluminum in any form.

The scope also excludes collapsible tubular containers composed of metallic elements corresponding to alloy code 1080A as designated by the Aluminum Association where the tubular container (excluding the nozzle) meets each of the following dimensional characteristics:

(1) length of 37 millimeters ("mm") or 62 mm,

(2) outer diameter of 11.0 mm or 12.7 mm, and

(3) wall thickness not exceeding 0.13 mm.

Also excluded from the scope of the *Orders* are finished heat sinks. Finished heat sinks are fabricated heat sinks made from aluminum extrusions the design and production of which are organized around meeting certain specified thermal performance requirements and which have been fully, albeit not necessarily individually, tested to comply with such requirements.

Imports of the subject merchandise are provided for under the following categories of the Harmonized Tariff Schedule of the United States (HTSUS): 6603.90.8100, 7616.99.51,

8479.89.94, 8481.90.9060, 8481.90.9085, 9031.90.9195, 8424.90.9080, 9405.99.4020,

9031.90.90.95, 7616.10.90.90, 7609.00.00, 7610.10.00, 7610.90.00, 7615.10.30, 7615.10.71,

7615.10.91, 7615.19.10, 7615.19.30, 7615.19.50, 7615.19.70, 7615.19.90, 7615.20.00,

7616.99.10, 7616.99.50, 8479.89.98, 8479.90.94, 8513.90.20, 9403.10.00, 9403.20.00,

7604.21.00.00, 7604.29.10.00, 7604.29.30.10, 7604.29.30.50, 7604.29.50.30, 7604.29.50.60,

7608.20.00.30, 7608.20.00.90, 8302.10.30.00, 8302.10.60.30, 8302.10.60.60, 8302.10.60.90,

8302.20.00.00, 8302.30.30.10, 8302.30.30.60, 8302.41.30.00, 8302.41.60.15, 8302.41.60.45,

8302.41.60.50, 8302.41.60.80, 8302.42.30.10, 8302.42.30.15, 8302.42.30.65, 8302.49.60.35,

8302.49.60.45, 8302.49.60.55, 8302.49.60.85, 8302.50.00.00, 8302.60.90.00, 8305.10.00.50,

8306.30.00.00, 8414.59.60.90, 8415.90.80.45, 8418.99.80.05, 8418.99.80.50, 8418.99.80.60,

8419.90.10.00, 8422.90.06.40, 8473.30.20.00, 8473.30.51.00, 8479.90.85.00, 8486.90.00.00,

8487.90.00.80, 8503.00.95.20, 8508.70.00.00, 8515.90.20.00, 8516.90.50.00, 8516.90.80.50,

8517.70.00.00, 8529.90.73.00, 8529.90.97.60, 8536.90.80.85, 8538.10.00.00, 8543.90.88.80,

8708.29.50.60, 8708.80.65.90, 8803.30.00.60, 9013.90.50.00, 9013.90.90.00, 9401.90.50.81,

9403.90.10.40, 9403.90.10.50, 9403.90.10.85, 9403.90.25.40, 9403.90.25.80, 9403.90.40.05,

9403.90.40.10, 9403.90.40.60, 9403.90.50.05, 9403.90.50.10, 9403.90.50.80, 9403.90.60.05,

9403.90.60.10, 9403.90.60.80, 9403.90.70.05, 9403.90.70.10, 9403.90.70.80, 9403.90.80.10,

9403.90.80.15, 9403.90.80.20, 9403.90.80.41, 9403.90.80.51, 9403.90.80.61, 9506.11.40.80,

9506.51.40.00, 9506.51.60.00, 9506.59.40.40, 9506.70.20.90, 9506.91.00.10, 9506.91.00.20,

9506.91.00.30, 9506.99.05.10, 9506.99.05.20, 9506.99.05.30, 9506.99.15.00, 9506.99.20.00,

9506.99.25.80, 9506.99.28.00, 9506.99.55.00, 9506.99.60.80, 9507.30.20.00, 9507.30.40.00,

9507.30.60.00, 9507.90.60.00, and 9603.90.80.50.

The subject merchandise entered as parts of other aluminum products may be classifiable under the following additional Chapter 76 subheadings: 7610.10, 7610.90, 7615.19, 7615.20, and 7616.99, as well as under other HTSUS chapters. In addition, fin evaporator coils may be classifiable under HTSUS numbers: 8418.99.80.50 and 8418.99.80.60. While HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of the *Orders* is dispositive.

## III. BACKGROUND

Worldwide's door thresholds contain a combination of aluminum extrusions and non-aluminum components, including synthetic plastic polymers such as polyvinyl chloride (PVC), polyethylene, polyurethane, polypropylene or thermoplastic elastomer, wood, and stainless steel.[11] In the Final Scope Ruling on Worldwide's door thresholds, Commerce determined that those door thresholds were covered by the scope of the *Orders* based on the scope language and sources described in 19 CFR 351.225(k)(1).[12] Specifically, we determined that Worldwide's door thresholds fell under the general scope provisions covering parts for final finished products (*i.e.*, parts for doors) that are assembled after importation; identifying subject extrusions with reference to their end-use with door thresholds listed as a specific example; and covered subassemblies.[13] After concluding that the door thresholds were covered by the general scope language of the *Orders*, we then determined that the finished merchandise exclusion was inapposite.[14]

[11] *See* Worldwide's Letter, "Response to Supplemental Questionnaire on Scope Ruling Request for Worldwide Door Thresholds," dated November 7, 2017 (First Worldwide Supplemental Response), at 3.
[12] *See* Final Scope Ruling at 32-37.
[13] *Id.* at 33-34.
[14] *Id.* at 35-36.

Worldwide challenged Commerce's scope ruling and, on August 27, 2020, in *Worldwide I*, the CIT held that Commerce misinterpreted the factors specified in 19 CFR 351.225(k)(1), the scope provision covering parts for final finished products, and the scope provisions covering extrusions that "may be identified with reference to their end use, such as . . . door thresholds . . . , " which the scope states "are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation."[15] Although the Court acknowledged the language in the scope which states that "{t}he scope includes the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e*., partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below,"[16] the Court did not explicitly rule on Commerce's finding that Worldwide's door thresholds were subassemblies, and therefore, subject merchandise.[17] The Court, instead, remanded Commerce's scope ruling for consideration of whether the finished merchandise exclusion applied to Worldwide's door thresholds.[18]

In the First Final Remand Redetermination, Commerce continued to find that Worldwide's door thresholds were included in the scope of the *Orders* as subassemblies, and were not covered by the finished merchandise exclusion.[19] Commerce reasoned that the door thresholds were partially assembled, intermediate products that did not function on their own, but were designed to be incorporated into a larger downstream product, such as a door frame, completed door unit, or residential or commercial building.[20] Because Commerce found that the

[15] *See Worldwide I*, 466 F. Supp. 3d at 1373-79.
[16] *Id.*, 466 F. Supp. 3d at 1380.
[17] *Id.*, 466 F. Supp. 3d at 1375.
[18] *Id.*, 466 F. Supp. 3d at 1380.
[19] *See* First Final Remand Redetermination at 22-26.
[20] *Id*. at 23-24.

door thresholds were subassemblies, it concluded that the finished merchandise exclusion was inapplicable.[21]

In *Worldwide II*, the CIT ruled that Commerce impermissibly made findings in its First Final Remand Redetermination which were based on inferences that were contradicted or unsupported by other information on the record.[22] Specifically, in support of its conclusion that Worldwide's door thresholds are not in and of themselves finished merchandise, but intermediary products incorporated into larger finished merchandise, Commerce cited record evidence stating that door thresholds generally require cutting and fabrication prior to installation.[23] The CIT concluded that these statements inferred, but did not clearly substantiate, that Worldwide's door thresholds were also customizable intermediate products, and that Commerce's conclusions were contradicted by Worldwide's characterization of its door thresholds as "fully assembled at the time of entry … {and} ready for installation within a door frame, or residential or commercial building without any further finishing or fabrication."[24] Because Commerce's determination cited this general characterization of door thresholds requiring further cutting or manufacturing, the CIT remanded Commerce's decision to reconsider its factual findings regarding whether Worldwide's door thresholds require further processing before incorporation with other products.[25]

In *Worldwide II*, the CIT also stated that the language of the finished merchandise exclusion lists "doors with glass or vinyl" and "finished windows with glass" as exemplars of finished merchandise.[26] The CIT stated that Commerce had not sufficiently considered why

[21] *Id.* at 26.
[22] *See Worldwide II*, 537 F. Supp. 3d at 1404-05, 1408-09.
[23] *See* First Final Remand Redetermination at 36-37.
[24] *See Worldwide II*, 537 F. Supp. 3d at 1412.
[25] *Id.*, 537 F. Supp. 3d at 1413-14.
[26] *Id.*

"doors with glass or vinyl" and "finished windows with glass" – which were not part of a larger downstream product – could satisfy the finished merchandise exclusion, but Worldwide's door thresholds could not.[27]  Accordingly, the CIT directed Commerce on remand to determine whether Worldwide's door thresholds qualified for the finished merchandise exclusion.[28]

In the Second Final Remand Redetermination, Commerce explained that its conclusion that Worldwide's door thresholds were subassemblies did not rest on whether the door thresholds themselves underwent further cutting or fabrication, but whether they were intermediate products that require further incorporation of other components to form a downstream finished product.[29] However, Commerce further explained:

> in *Worldwide II*, the Court found unpersuasive Commerce's determination that Worldwide's door thresholds were subassemblies which must be further incorporated into a larger downstream product (*e.g.*, a door unit or door frame). Specifically, the Court determined in *Worldwide II* that record evidence did not support the conclusion that Worldwide's door thresholds must undergo further cutting or fabrication in order to be incorporated into a completed product.  The Court also held that Commerce misinterpreted the scope language in concluding that, because Worldwide's door thresholds were intermediate products, rather than final finished goods in and of themselves, the finished merchandise exclusion was inapplicable.  Thus, the Court disagreed with Commerce's finding that Worldwide's door thresholds were subassemblies covered by the scope of the *Orders* and not excluded under the finished merchandise exclusion.[30]

Accordingly, Commerce concluded that although it disagreed with the Court's interpretation of the scope language, it was finding under respectful protest, and consistent with the CIT's opinion and analysis, that Worldwide's door thresholds were not subassemblies and were excluded from the *Orders* under the finished merchandise exclusion.[31]  Commerce also

---

[27] *Id.*
[28] *Id.* at 1414.
[29] *See* Second Final Remand Redetermination at 14-15.
[30] *Id.* at 11.
[31] *Id.* at 11-12.

stated that "{s}hould the Court sustain these Final Results of Redetermination, we will issue a revised scope ruling accordingly."[32]

In *Worldwide III,* the CIT held that Commerce misinterpreted its remand order in *Worldwide II* as directing Commerce to reach only one conclusion – that Worldwide's door thresholds should be excluded from the scope of the *Orders.*[33] The CIT also held that Commerce incorrectly asserted that the Court made determinations as to whether Worldwide's door thresholds were subassemblies, whether Commerce incorrectly found that the door thresholds were designed to be incorporated into a larger downstream product, and whether Worldwide's door thresholds qualified for the finished merchandise exclusion.[34] The CIT further held that Commerce's Second Final Remand Redetermination did not sufficiently explain why Commerce found the door thresholds to be outside the scope of the *Orders*, and did not address the CIT's instructions that Commerce determine whether Worldwide's door thresholds required further cutting or machining prior to incorporation into a larger product.[35]

Citing Commerce's statement that it "will issue a revised scope ruling" if the CIT affirmed the Second Final Remand Redetermination, the Court also ruled that the Second Final Remand Redetermination "is not a decision in a form the court may sustain" because it "is not a scope ruling or determination but is merely preliminary to such a decision."[36] The CIT further explained that because the Second Final Remand Redetermination was not the actual scope ruling or determination Commerce intends to issue, it would not be self-effectuating if sustained by the CIT, and even if the CIT did sustain the Second Final Remand Redetermination, any

[32] *Id.* at 16.
[33] *See Worldwide III* at 17-18.
[34] *Id.* at 19-20.
[35] *Id.* at 17-18, 20-21.
[36] *Id.* at 16.

decision that followed would escape judicial review and also deprive parties of an opportunity to comment prior to judicial review.[37] Thus, the CIT directed Commerce to issue a new decision, consistent with its legal conclusions and holding and in a form the CIT could sustain and that would go into effect if sustained by the Court, determining whether the extruded aluminum components of Worldwide's door thresholds are covered by, or excluded from, the scope of the *Orders*.[38]

On August 29, 2022, we released our Draft Results of Redetermination to interested parties.[39] On September 2, 2022, we received comments from Worldwide,[40] and the Aluminum Extrusions Fair Trade Committee (the petitioner) and Endura Products, Inc. (Endura).[41] We respond to these comments below. After considering these comments and the Court's opinion and analysis in *Worldwide III,* we continue to find, under respectful protest, that Worldwide's door thresholds are excluded from the *Orders* as finished merchandise.

## IV. ANALYSIS REGARDING THE FINISHED MERCHANDISE EXCLUSION

The scope of the *Orders* excludes "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels."[42] Accordingly, to qualify as "finished merchandise," one of the requirements is that the product in question must contain aluminum extrusions "as parts,"

[37] *Id.* at 17.
[38] *Id.* at 22.
[39] *See* Draft Results of Redetermination, *Worldwide Door Components, Inc. v. United States*, Court No. 19-00012, Slip. Op. 22-91 (CIT August 10, 2022), dated August 29, 2022 (Draft Results of Redetermination).
[40] *See* Worldwide Letter, "Aluminum Extrusions from the People's Republic of China – Worldwide Door Component's Comments on Draft Results of Redetermination Pursuant to Court Remand, Court No. 19-00012, Slip Op. 22-91," dated September 2, 2022 (Worldwide Draft Redetermination Comments).
[41] *See* Petitioner and Endura's Letter, "Aluminum Extrusions from the People's Republic of China: Comments on Draft Results of Redetermination," dated September 2, 2022 (Petitioner and Endura Draft Redetermination Comments).
[42] *See Orders.*

plus an additional non-extruded aluminum component. Otherwise, this specific language (*i.e.*, "as parts") would be read out of the scope, resulting in the different condition, "containing aluminum extrusions that are fully and permanently assembled and completed at the time of entry." Thus, to give effect to this "as parts" language, we find that to qualify for the finished merchandise exclusion, the product must contain aluminum extrusions as parts, and must include some non-extruded aluminum component.

Worldwide's door thresholds contain aluminum extrusions "as parts," plus additional non-extruded aluminum components. Worldwide's door thresholds' extruded aluminum components include an aluminum cap and aluminum cover.[43] The non-extruded aluminum components consist of synthetic plastic polymers such as polyvinyl chloride (PVC), polyethylene, polyurethane, polypropylene or thermoplastic elastomer, wood, and stainless steel.[44] Thus, we find that Worldwide's door thresholds meet this requirement of the finished merchandise exclusion, because they contain non-extruded aluminum components, as well as aluminum extrusions "as parts."

The finished merchandise exclusion also requires that the product at issue be "fully and permanently assembled and completed at the time of entry." Worldwide describes its door thresholds as "fully assembled at the time of entry, complete with all of the necessary components to be ready for installation within a door frame, or residential or commercial

[43] *See* Worldwide's Letter, "Request for a Scope Ruling Finding that Certain Fully Assembled Door Thresholds from the People's Republic of China are Not Subject to the Antidumping and Countervailing Duty Orders on Certain Aluminum Extrusions from the People's Republic of China," dated August 3, 2017 (Worldwide Scope Request), at Exhibit A; *see also* First Worldwide Supplemental Response, at 1-10; and Worldwide's Letter, "Response to Third Supplemental Questionnaire on Scope Ruling Request for Worldwide Door Thresholds," dated November 7, 2017 (Third Worldwide Supplemental Response), at 1-2.

[44] *See* Worldwide Scope Request; *see also* First Worldwide Supplemental Response at 3; Worldwide Letter, "Response to Second Supplemental Questionnaire on Scope Ruling Request for Worldwide Door Thresholds," dated February 20, 2018 (Second Worldwide Supplemental Response); and Third Worldwide Supplemental Response.

building without any further finishing or fabrication."[45]  In the First Final Remand Redetermination, we cited record information indicating that door thresholds generally require cutting and fabrication prior to installation.[46]  In light of the Court's findings, we have reassessed that evidence and determine that the record does not support the conclusion that Worldwide's specific door thresholds require cutting or fabrication after importation into the United States.

Moreover, Worldwide describes its door thresholds as assemblies that are ready for use without further processing and that cannot be cut to custom sizes without destroying the thresholds' functionality.[47]  Again, in light of the Court's findings, we have reconsidered the record evidence and we have not identified any information specific to Worldwide's door thresholds that would contradict this characterization, beyond the general evidence that the Court has previously determined was insufficient.[48]

Thus, we conclude that Worldwide's door thresholds are imported as finished products that are fully and permanently assembled at the time of importation and, thus, meet the scope requirements of the finished merchandise exclusion because the door thresholds enter the United States as fully and permanently assembled and completed products.

Accordingly, because we conclude that Worldwide's door thresholds are:  (1) fully assembled and completed at the time of entry; and (2) contain extruded aluminum and non-extruded aluminum components, we find that Worldwide's door thresholds satisfy the criteria for the finished merchandise exclusion.  Thus, Worldwide's entire door thresholds – including both

---

[45] *See* Worldwide Scope Request at 2-3.
[46] *See* First Final Remand Redetermination at 36-37 (citing November 17, 2017, Declaration of Bruce Procton, Declaration of Tim Foster, and Declaration of Larry Sanford; *see also* January 18, 2018, Declaration of Bruce Procton).
[47] *See* Worldwide Scope Request at 3; *see also* affidavit from J. Monts de Oca, Worldwide Door's President and CEO, at Exhibit 1 of Worldwide January 11, 2018, Scope Comments.
[48] *See Worldwide II*, 537 F. Supp. 3d at 1412.

the extruded aluminum and non-extruded aluminum parts – are excluded, on remand, from the scope of the *Orders* under the finished merchandise exclusion.

## V. INTERESTED PARTY COMMENTS

### Comment 1: Whether Commerce Considered the Finished Merchandise Exclusion in its Original Scope Ruling and Whether Commerce Should Issue this Redetermination Under Protest

*Worldwide Comments:*

- Worldwide agrees with Commerce's conclusion that its door thresholds are excluded from the scope of the *Orders* under the finished merchandise exclusion. However, Worldwide contends that Commerce should clarify that, in the Final Scope Ruling, Commerce did not determine that the finished merchandise exclusion "did not apply," but, instead, "declined entirely to consider whether the finished merchandise exclusion applied to Worldwide Door's door thresholds."[49]
- Additionally, Worldwide asserts that it is unclear why Commerce has chosen to conduct this redetermination under protest. Worldwide asserts that Commerce generally "…will issue a remand under protest when the court remands with instructions that dictate a certain outcome, contrary to how Commerce would otherwise find."[50] In the instant proceeding, Worldwide asserts there is no basis for Commerce to protest because none of the Court's remand orders have directed a particular outcome, but instead have directed Commerce to issue its results based on the evidence that is on the record of this proceeding.[51]

**Commerce's Position:**

In the Final Scope Ruling, Commerce concluded that Worldwide's door thresholds fell under the general scope provisions covering parts for final finished products (*i.e.*, parts for doors) that are assembled after importation; identifying subject extrusions with reference to their end-use with door thresholds listed as a specific example; and covered subassemblies.[52] Commerce thus reasoned that "the express inclusion of 'door thresholds' within the scope of the *Orders* … renders the reliance of Worldwide … upon the finished merchandise exclusion inapposite."[53]

---

[49] *See* Worldwide Draft Redetermination Comments at 2-3.
[50] *Id.* at 3 (citing *Viraj,* 343 F. 3d at 1371, 1376).
[51] *Id.*
[52] *See* Final Scope Ruling at 33-34.
[53] *Id.* at 35-36.

However, in compliance with the Court's subsequent remand orders, in particular *Worldwide III*, we have further assessed the record evidence and analyzed whether Worldwide's specific door thresholds satisfy the criteria of the finished merchandise exclusion. Although the Court did not direct Commerce to reach a particular outcome, we have issued this remand under protest because, as explained in the First and Second Final Remand Redeterminations, we disagree with the Court's interpretation of the scope language and certain Federal Circuit precedent.[54]

**Comment 2: Whether Worldwide's Door Thresholds are Excluded from the *Orders* under the Finished Merchandise Exclusion**

*Petitioner and Endura Comments:*

- The petitioner and Endura acknowledge that Commerce issued the Draft Results of Redetermination under protest. However, the petitioner and Endura continue to maintain that Commerce's original scope ruling correctly found that, because Worldwide's door thresholds are expressly included in the scope of the *Orders,* the finished merchandise exclusion is inapplicable.[55] The petitioner and Endura also support Commerce's conclusion in the First Final Remand Redetermination that Worldwide's door thresholds should not be excluded from the scope of the *Orders* as finished merchandise because door thresholds are subassemblies and are explicitly identified in the scope of the *Orders* and are, thus, distinguishable from the exemplars in the finished merchandise exclusion. As such, the petitioner and Endura argue that the finished merchandise exclusion is inapplicable with respect to Worldwide's door thresholds.[56]
- Finally, the petitioner and Endura argue that a product would not qualify as finished merchandise simply because it requires no further cutting or machining after importation.[57] The petitioner and Endura also continue to argue that door thresholds are highly "customizable," and "generally require further finishing and fabrication (including cutting or machining) before assembly into a finished door unit."[58] The petitioner and Endura assert that Endura lost to Worldwide customers who purchased thresholds from Endura that required further customization.[59] The petitioner and Endura assert that Commerce should continue to find that Worldwide's door thresholds are not "fully and permanently assembled and completed at the time of entry" as required by the finished merchandise exclusion.[60]

---

[54] *See* First Final Remand Redetermination at 10-13; *see also* Second Final Remand Redetermination at 11.
[55] *See* Petitioner and Endura Draft Redetermination Comments at 2-3.
[56] *Id.* at 3-5.
[57] *Id.* at 5-6.
[58] *Id.* at 6.
[59] *Id.* at 7.
[60] *Id.* at 6-7.

**Commerce's Position:**

In the First Final Remand Redetermination, we concluded that Worldwide's door thresholds were subassemblies distinguishable from the products listed in the finished merchandise exclusion. Specifically, we concluded that the product examples in the finished merchandise exclusion were not subassemblies within the meaning of the general scope language, because the scope specifically defined them as finished merchandise.[61] However, the CIT reasoned that Commerce improperly interpreted the exemplars as an exclusive list, rather than examples of finished merchandise.[62] The CIT also stated that Commerce had not sufficiently considered why "doors with glass or vinyl" or "finished windows with glass" – which, like door thresholds, were not part of a larger downstream product – could satisfy the finished merchandise exclusion, but Worldwide's door thresholds could not.[63] Accordingly, the CIT directed Commerce on remand to determine whether Worldwide's door thresholds qualified for the finished merchandise exclusion.[64] Thus, consistent with the CIT's reasoning, and under respectful protest, we have analyzed whether Worldwide's door thresholds satisfy the criteria for the finished merchandise exclusion, despite door thresholds not being specifically listed in the finished merchandise exclusion.

In conducting this analysis as to whether Worldwide's door thresholds satisfy the criteria of the finished merchandise exclusion, we have considered in this redetermination whether Worldwide's door thresholds: (1) contain extruded aluminum and non-aluminum components; and (2) are fully assembled and completed at the time of entry. The Court stated that the issue of whether Worldwide's door thresholds require cutting or machining after importation and prior to

[61] *See* First Final Remand Redetermination at 18-19.
[62] *See Worldwide II*, 537 F. Supp. 3d at 1413; *see also Worldwide III* at 20.
[63] *See Worldwide II*, 537 F. Supp. 3d at 1413-14; *see also Worldwide III* at 20.
[64] *See Worldwide II*, 537 F. Supp. 3d at 1414.

use is relevant to the finished merchandise exclusion's description of finished merchandise as "permanently assembled *and completed* at the time of entry."[65]  As explained above, Worldwide's door thresholds contain non-extruded aluminum components, as well as aluminum extrusions "as parts."  With respect to whether Worldwide's door thresholds are fully assembled and completed at the time of entry, we have reassessed the record evidence in light of the Court's findings in *Worldwide III*.  As explained above, we find that although the record contains information indicating that door thresholds generally require cutting and fabrication prior to installation, the record does not support the conclusion that Worldwide's specific door thresholds require cutting or fabrication after importation into the United States.  Regarding the petitioner and Endura's argument that Endura lost to Worldwide customers that had purchased door thresholds from Endura that required further processing, the record does not support the finding that any products these customers may have subsequently purchased from Worldwide were the specific door thresholds subject to this scope proceeding, and that such thresholds underwent further cutting or fabrication after importation and prior to use.[66]

Accordingly, and in accordance with the Court's opinion in *Worldwide III*, we conclude that because Worldwide's door thresholds:  (1) are fully assembled and completed at the time of entry; and (2) contain extruded aluminum and non-extruded aluminum components, we continue to find that Worldwide's door thresholds satisfy the criteria for the finished merchandise exclusion.

---

[65] *See Worldwide III* at 16 (emphasis in court opinion).
[66] *See* Petitioner and Endura Draft Redetermination Comments at 7 (citing Petitioner and Endura's Letter, "Aluminum Extrusions from the People's Republic of China:  Response to Worldwide's Comments," dated January 18, 2018, at 11 and Exhibit 3).

## VI. FINAL RESULTS OF REDETERMINATION

As a result of this redetermination, we have determined, under protest, that Worldwide's door thresholds – including both the extruded aluminum and non-aluminum components – are outside the scope of the *Orders* pursuant to the finished merchandise exclusion. We also clarify that this redetermination contains the entirety of Commerce's analysis of whether Worldwide's door thresholds are covered by the scope of the *Orders*. We do not intend to issue another determination or scope ruling on Worldwide's door thresholds subsequent to judicial review of this redetermination. If the Court sustains this redetermination, a *Federal Register* notice will be published stating that Worldwide's door thresholds are excluded from the scope of the *Orders* based on the finished merchandise exclusion. Furthermore, instructions will be issued to CBP, directing CBP to give effect to this determination as appropriate.

9/8/2022

X 

Signed by: LISA WANG

Lisa W. Wang
Assistant Secretary
for Enforcement and Compliance