Slip Op. No. 22-143

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **WORLDWIDE DOOR COMPONENTS, INC.,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | Before:  Timothy C. Stanceu, Judge |
| Defendant, | Court No. 19-00012 |
| and | |
| **ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE AND ENDURA PRODUCTS, INC.,** | |
| Defendant-Intervenors. | |

OPINION

[Sustaining an agency decision submitted in response to court order.]

Dated: December 16, 2022

*John M. Foote*, Kelley Drye & Warren LLP, of Washington, DC, for plaintiff.

*Aimee Lee*, Assistant Director, Civil Division, U.S. Department of Justice, of New York, NY, for defendant.  With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Tara K. Hogan*, Assistant Director.  Of counsel on the brief was *Nikki Kalbing*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

*Robert E. DeFrancesco, III*, Wiley Rein LLP, of Washington, DC, for defendant-intervenors.  With him on the brief were *Alan H. Price* and *Elizabeth S. Lee*.

Stanceu, Judge: Plaintiff Worldwide Door Components, Inc. ("Worldwide")

brought this action to contest a decision (the "Scope Ruling") by the International Trade

Administration, U.S. Department of Commerce ("Commerce" or the "Department") on

its imported "door thresholds," each of which is an assembly containing an aluminum

extrusion among various other components.  In this litigation, Commerce previously

took the position that an aluminum extrusion component within each door threshold is

within the scope of antidumping and countervailing duty orders on aluminum

extrusions from the People's Republic of China (the "Orders").

Before the court is the Department's most recent decision ("Third Remand

Redetermination"), which Commerce submitted in response to the court's opinion and

order in *Worldwide Door Components, Inc. v. United States*, 46 CIT __, 589 F. Supp. 3d 1185

(2022) ("*Worldwide III*").  Responding to the court's order, Commerce decided in the

Third Remand Redetermination, under protest, that the imported door thresholds, in

the entirety, are excluded from the scope of the Orders.

Plaintiff has commented in favor of the Third Remand Redetermination.

Defendant-intervenors, the Aluminum Extrusions Fair Trade Committee and Endura

Products, Inc., a U.S. producer of aluminum extrusions, have commented in opposition.

The court sustains the decision in the Third Remand Redetermination that the

door thresholds are excluded from the scope of the Orders.

## I. BACKGROUND

Background on this litigation is presented in the court's previous opinions and is summarized and supplemented herein.  *Id.*, 46 CIT at __, 589 F. Supp. 3d at 1187–92; *Worldwide Door Components, Inc. v. United States*, 45 CIT __, __, 537 F. Supp. 3d 1403, 1405–11 (2021) ("*Worldwide II*"); *Worldwide Door Components, Inc. v. United States*, 44 CIT __, __, 466 F. Supp. 3d 1370, 1372–73 (2020) ("*Worldwide I*").

The decision plaintiff contests in this litigation is *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Rulings on Worldwide Door Components Inc., MJB Wood Group Inc., and Columbia Aluminum Products Door Thresholds*, P.R. Doc. 36 (Int'l Trade Admin. Dec. 19, 2018) ("*Scope Ruling*").  The Scope Ruling construed the scope of *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"), and *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").

The court remanded the Scope Ruling to Commerce in *Worldwide I*, ruling that Commerce had misinterpreted the scope language of the Orders in two respects.  Commerce submitted a new determination in response (the "First Remand Redetermination").  *Final Results of Redetermination Pursuant to Ct. Remand* (Dec. 23,

2020), ECF No. 64-1 ("*First Remand Redetermination*").  In *Worldwide II*, the court again

issued a remand to the agency.  In response, Commerce filed another determination (the

"Second Remand Redetermination") with the court on December 13, 2021.  Final Results

of Redetermination Pursuant to Ct. Remand, ECF No. 85–1 ("*Second Remand

Redetermination*").  The court remanded the Second Remand Redetermination to

Commerce in *Worldwide III*.

Commerce filed the Third Remand Redetermination on September 9, 2022, in

response to the court's opinion and order in *Worldwide III*.  Final Results of

Redetermination Pursuant to Ct. Remand, ECF No. 101-1 ("*Third Remand

Redetermination*").  Plaintiff submitted comments in support on September 26, 2022.  Pl.'s

Comments in Supp. of Commerce's Third Remand Redetermination, ECF No. 103.  That

same day, defendant-intervenors filed their comments in opposition.  Def.-Intervenors'

Comments on Final Results of Third Remand Redetermination Pursuant to Ct. Remand,

ECF No. 104.  Defendant replied to the comments on October 6, 2022.  Def.'s Resp. to

Comments on Third Remand Redetermination, ECF No. 106.

## II. DISCUSSION

### A.  Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs

Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions

brought under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a.[1]

Among the decisions that may be contested according to section 516A is a

determination of "whether a particular type of merchandise is within the class or kind

of merchandise described in an . . . antidumping or countervailing duty order." *Id*.

§ 1516a(a)(2)(B)(vi).  In reviewing the Scope Ruling, the court must set aside any

determination, finding, or conclusion found "to be unsupported by substantial evidence

on the record, or otherwise not in accordance with law." *Id*. § 1516a(b)(1)(B)(i).

### B.  The Court's Decisions in *Worldwide I*, *Worldwide II*, and *Worldwide III*

The Orders apply generally to "aluminum extrusions," which are defined in the

Orders as "shapes and forms, produced by an extrusion process." *AD Order*, 76 Fed.

Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653.  As the court's previous decisions have

recognized, the door thresholds at issue in this litigation are not themselves aluminum

extrusions. *Worldwide II*, 45 CIT at __, 537 F. Supp. 3d at 1411 ("Worldwide's door

thresholds are not 'aluminum extrusions' at the time of importation" (citing *Worldwide I*,

44 CIT at __, 466 F. Supp. 3d at 1357)).  Nevertheless, the Orders contain a provision (the

"subassemblies" provision) that enlarges the scope of the Orders to include aluminum

extrusion components present in certain imported "partially assembled merchandise."

---

[1] Citations to the United States Code and to the Code of Federal Regulations are to the 2018 editions.

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  Another provision

in the scope language of the Orders, the "finished merchandise exclusion," excludes

from the scope of the Orders certain assembled and completed merchandise containing

aluminum extrusions as parts.  *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed.

Reg. at 30,654.

At issue in this litigation are eighteen models of imported door thresholds, each

of which is not itself an aluminum extrusion but is instead an assembly of various

components, including polyvinyl chloride, other plastics, wood, or steel.  *Worldwide I*,

44 CIT at__, 466 F. Supp. 3d at 1373.  One of those components in each door threshold is

fabricated from a single piece of extruded aluminum and, were it imported separately,

would be described by the scope language of the Orders.  *Id*.

The court in *Worldwide I* held that the contested Scope Ruling, in determining

that the aluminum extrusion component in each door threshold is subject to the Orders,

misinterpreted the scope language of the Orders in three respects and discussed these

errors in detail.  44 CIT at __, 466 F. Supp. 3d at 1373–79.  Among these errors was the

Department's refusal to consider whether Worldwide's door thresholds were excluded

from the scope of the Orders under the "finished merchandise exclusion."  *Id*., 44 CIT

at __, 466 F. Supp. 3d at 1376–78.  This express exclusion from the scope applies to

"finished merchandise containing aluminum extrusions as parts that are fully and

permanently assembled and completed at the time of entry, such as finished windows

with glass, doors with glass or vinyl, picture frames with glass pane and backing

material, and solar panels."  *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at

30,654.

Commerce concluded in the Scope Ruling that "the express inclusion of 'door

thresholds' within the scope of the *Orders* (regardless of whether the door thresholds

are ready for use at the time of importation) renders the reliance of Worldwide . . . upon

the finished merchandise exclusion inapposite."  *Scope Ruling* at 35–36; *see also*

*AD Order*, 76 Fed. Reg. at 30,651 & *CVD Order*, 76 Fed. Reg. at 30,654 ("Subject

extrusions may be identified with reference to their end use, such as fence posts,

electrical conduits, door thresholds, carpet trim, or heat sinks . . . .").  The court in

*Worldwide I* rejected the Department's reasoning because it misinterpreted the scope

language of the Orders.  44 CIT at __, 470 F. Supp. 3d at 1376 ("The scope language does

not expressly include all door thresholds in which there is an extruded aluminum

component.  Instead, as the court has discussed, the inclusion of 'door thresholds' in the

scope language as an exemplar is confined to door thresholds that *are* aluminum

extrusions." (citing *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654)).

*Worldwide I* concluded, further, that Commerce "erred in reasoning that 'finding

door thresholds excluded under the finished merchandise exclusion would render the

express inclusion of "door thresholds" meaningless.'"  44 CIT at __, 470 F. Supp. 3d at

1376 (quoting *Scope Ruling* at 36).  As the court stated, "[d]oor thresholds that are

fabricated from aluminum extrusions are 'extrusions' for purposes of the scope

language and are expressly included in the scope by operation of the reference to 'door

thresholds'; other door thresholds, which are not themselves 'extrusions' for purposes

of the Orders, are not."  *Id.*, 44 CIT at __, 466 F. Supp. 3d at 1376–77.  The court in

*Worldwide I* added that:

> Rather than rendering the express inclusion of door thresholds
> meaningless, excluding the assembled goods at issue from the Orders
> according to the finished merchandise exclusion would have no effect at
> all on the express inclusion of door thresholds, for a straightforward
> reason: a door threshold that is fabricated from an aluminum extrusion
> could never qualify under the finished merchandise exclusion in the first
> place because the finished merchandise exclusion applies only to
> assembled goods.

44 CIT at __, 466 F. Supp. 3d at 1377 (citing *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*,

76 Fed. Reg. at 30,654).

In light of the multiple errors the court identified, the court in *Worldwide I*

ordered Commerce to reconsider the Scope Ruling and to give "full and fair"

consideration to the issue of whether the finished merchandise exclusion applies to

Worldwide's door thresholds "upon making findings that are supported by substantial

record evidence."  44 CIT at __, 466 F. Supp. 3d at 1380.

In response to the court's opinion and order in *Worldwide I*, Commerce submitted the First Remand Redetermination on December 23, 2020.  In it, Commerce disagreed with the court that the finished merchandise exclusion was relevant to the Department's analysis but addressed, under protest, the issue of whether this exclusion applied to Worldwide's door thresholds.  Commerce concluded that it did not.

Based on its factual findings on the applications for which Worldwide's door thresholds are produced, Commerce reached two conclusions in the First Remand Redetermination.  Commerce concluded, first, that these products do not qualify for the finished merchandise exclusion because they are "partially assembled merchandise" and "intermediate products" for purposes of the subassemblies provision in the Orders. *Worldwide II*, 45 CIT at __, 537 F. Supp. 3d at 1411 (citing *First Remand Redetermination* at 23).[2]  Second, Commerce concluded that because they were described by the

---

[2] The subassemblies provision states that "[t]he scope includes the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below."  *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650, 30,651 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653, 30,654 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").  The reference to the "kit" is a reference to the "finished goods kit" exclusion, under which the antidumping and countervailing duty orders exclude an imported good in unassembled form that includes all the parts required for assembly of a final finished good.  *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  Because the door thresholds at issue are imported in fully assembled, not disassembled, form, this exclusion does not apply.

subassemblies provision, Worldwide's door thresholds could not qualify for the

finished merchandise exclusion.  According to the First Remand Redetermination,

"[a] subassembly is merchandise which is designed for the sole purpose of becoming

part of a larger whole"; Commerce concluded that each of Worldwide's door

thresholds, which "must work in tandem with other components to be functional" and

is "a component of a larger downstream product," cannot, for those reasons, qualify for

the finished merchandise exclusion.  *First Remand Redetermination* at 24 (citation

omitted).

The court in *Worldwide II* rejected certain of the reasoning by which Commerce

supported its ultimate conclusion in the First Remand Redetermination that the

aluminum extrusion components within the door thresholds were subject to the Orders.

"Under the Department's analysis, only goods that are not 'designed for the sole

purpose of becoming part of a larger whole'. . . can satisfy the finished merchandise

exclusion, but this rationale is contrary to the terms by which that exclusion is

expressed in the scope language."  *Worldwide II*, 45 CIT at __, 537 F. Supp. 3d at 1414

(quoting *First Remand Redetermination* at 24).  The court pointed to two of the exemplars

of products the scope language listed as qualifying for the finished merchandise

exclusion, finished windows with glass and doors with glass or vinyl, as products that

"*are* specifically designed for the sole purpose of becoming part of a larger whole."  *Id*.

The court stated that "[e]ven the products Commerce itself considered to satisfy the finished merchandise exclusion, i.e., a complete, assembled door unit, and a 'final finished door with glass,' . . . do not 'function on their own,' . . . and cannot function until incorporated into a wall or other part of a building." *Id*. The court concluded that "[t]he [First] Remand Redetermination does not offer a plausible explanation of why the articles mentioned in the 'door' and 'window' exemplars of the finished merchandise exclusion satisfy that exclusion but that Worldwide's door thresholds . . . do not." *Id*.

In the First Remand Redetermination, Commerce, relying solely on statements by defendant-intervenors that did not pertain specifically to Worldwide's door thresholds, and despite certain record evidence that *did* pertain to Worldwide's products, inferred from these statements, but did not expressly find, "that the particular door thresholds at issue in this litigation . . . are so designed and manufactured as to require cutting or machining prior to assembly of a door unit or other structure." *Worldwide II*, 45 CIT at __, 537 F. Supp. 3d at 1412. The court attached significance to whether Worldwide's imported door thresholds required cutting or machining prior to use because that issue "is directly relevant to the applicability of the finished merchandise exclusion, which pertains to 'finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled *and completed* at the time of entry.'" *Id*., 45 CIT at __, 537 F. Supp. 3d at 1413 (quoting *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed.

Reg. at 30,654).  The court directed Commerce to reach "a finding from the record

evidence that the door thresholds at issue in this case either are, or are not, so designed

and produced as to require cutting or machining prior to use."  *Id*., 45 CIT at __, 537 F.

Supp. 3d at 1414.

In response to the court's opinion and order in *Worldwide II*, Commerce issued

the Second Remand Redetermination.  In the Second Remand Redetermination,

Commerce determined, under protest, that Worldwide's door thresholds were outside

the scope of the Orders.  *Second Remand Redetermination* at 16.

The court in *Worldwide III* explained that the Second Remand Redetermination

was not a decision in a form the court could sustain because it "is not the actual scope

ruling or determination Commerce plans to issue," so "the Second Remand

Redetermination would not be self-effectuating should the court sustain it, and the

agency decision that would follow if it were sustained would escape direct judicial

review."  46 CIT at __, 589 F. Supp. 3d at 1192.  Instead of providing the scope ruling

intended to be issued, Commerce in the Second Remand Redetermination stated that

"[s]hould the court sustain these Final Results of Redetermination, we will issue a

revised scope ruling accordingly."  *Second Remand Redetermination* at 16.  The court held

"the Department's proposed resolution of this litigation unsatisfactory" because "[n]ot

only would it deny the court the opportunity to review the agency's actual decision on

remand, it also would not allow the parties to comment on that decision before the

court reviews it." *Worldwide III*, 46 CIT at __, 589 F. Supp. 3d at 1192.  The court

directed "Commerce to issue a third remand redetermination that, like the agency

determination contested in this litigation, is a scope ruling or determination for the

court's review, and it must be in a form that would go into effect if sustained upon

judicial review." *Id.*, 46 CIT at __, 589 F. Supp. 3d at 1193.

     The court in *Worldwide III* also took issue with the Second Remand

Redetermination "in presenting no reasoning for ruling that the door thresholds are

outside the scope of the Orders other than its incorrect conclusion that the court ordered

Commerce to do so." *Id.*  The court observed that "Commerce devoted most of the

substantive discussion in the Second Remand Redetermination to its disagreements

with certain of the issues the court decided previously" and explained how the

Department's interpretation of *Worldwide II* erred in three respects.  *Id.*, 46 CIT at __,

589 F. Supp. 3d at 1193–94.  The court ordered Commerce to submit a third

redetermination upon remand that complies with *Worldwide III*.  46 CIT at __, 589

F. Supp. 3d at 1195.

### C.  The Third Remand Redetermination

     In the Third Remand Redetermination, Commerce decided once again, under

protest, that Worldwide's door thresholds, in the entirety, fall outside the scope of the

Orders. *Third Remand Redetermination* at 3. Commerce stated in the Third Remand

Redetermination that it "do[es] not intend to issue a scope ruling or other agency

determination subsequent to this Court's review of this remand redetermination" and

that "if the CIT [Court of International Trade] affirms this redetermination, a *Federal*

*Register* notice will be published stating that, consistent with the Court's holdings,

Worldwide's door thresholds are excluded from the scope of the *Orders*." *Id.* "Relevant

instructions to U.S. Customs and Border Protection (CPB) giving effect to that

determination, as appropriate, will also be issued at that time." *Id*.

As the court explained in *Worldwide III*, Commerce was required to make a

decision on whether the goods are within the scope of the Orders based on the record as

a whole. Commerce has now done so in the Third Remand Redetermination in a form

the court is able to sustain. The essential agency findings supporting the decision that

the door thresholds, in the entirety. are outside the scope of the Orders are supported

by substantial evidence on the record of this case. *See id*. at 8–16.

Defendant-intervenors' comments in opposition to the Third Remand

Redetermination are unconvincing and merely reiterate arguments the court has

rejected in its previous opinions and orders. Def.-Intervenors' Comments on Final

Results of Third Redetermination Pursuant to Ct. Remand 1–3 (Sept. 26, 2022), ECF

No. 104.

Defendant-intervenors argue, first, that the contested Scope Ruling correctly found Worldwide's door thresholds to be expressly included within the scope of the Orders. *Id*. at 1–2. They maintain that because of this express inclusion, "the agency's determination that the 'finished merchandise' exclusion is inapplicable to these products was correct." *Id*. As the court concluded in *Worldwide I*, and as the scope language of the Orders makes clear, the express reference in the scope language to "door thresholds" as an exemplar refers to door thresholds that are aluminum extrusions, not assemblies such as those at issue here. 44 CIT at __, 470 F. Supp. 3d at 1376.

They argue, next, that "Commerce's first redetermination, under respectful protest, that even considering the exclusion, door thresholds are 'subassemblies' within the meaning of the scope and not excludable as 'finished merchandise' was also supported by substantial evidence and in accordance with law." Def.-Intervenors' Comments 2. As discussed above, the Department's reasoning that "subassemblies" cannot qualify for the finished merchandise exclusion because they are goods "designed for the sole purpose of becoming part of a larger whole" was rejected by the court in *Worldwide II* as "contrary to the terms by which that exclusion is expressed in the scope language," which includes exemplars of products the scope language listed as qualifying for the finished merchandise exclusion even though they "*are* specifically

designed for the sole purpose of becoming part of a larger whole." 45 CIT at __, 537

F. Supp. 3d at 1414 (quoting *First Remand Redetermination* at 24).

Third, referring to Worldwide's door thresholds, defendant-intervenors argue

that "substantial record evidence also demonstrated that these products generally

require further finishing and fabrication after importation and prior to use, such that the

thresholds would also fail to meet the [finished merchandise] exclusion requirements in

this regard." Def.-Intervenors' Comments 2–3. This argument is also meritless.

Commerce permissibly concluded that the evidence upon which defendant-intervenors

rely for this argument did not pertain to the specific door thresholds at issue in this

proceeding. Upon reassessing the record evidence, Commerce concluded in the Third

Remand Redetermination that "the record does not support the conclusion that

Worldwide's specific door thresholds require cutting or fabrication after importation

into the United States." *Third Remand Redetermination* at 15.

### III.  CONCLUSION

For the reasons discussed in the foregoing, the court will enter judgment

sustaining the decision in the Third Remand Redetermination that Worldwide's door

thresholds are not within the scope of the Orders.

                                                      /s/ Timothy C. Stanceu
                                                      Timothy C. Stanceu, Judge

Dated: December 16, 2022
        New York, New York