Slip Op. 25-80

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **WORLDWIDE DOOR COMPONENTS, INC.,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | **Before:  Timothy C. Stanceu, Judge** |
| Defendant, | **Court No. 19-00012** |
| and | |
| **ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE AND ENDURA PRODUCTS, INC.,** | |
| Defendant-Intervenors. | |

### OPINION

[Effectuating the mandate of the U.S. Court of Appeals for the Federal Circuit by reinstating a portion of a previous agency determination]

Dated: June 25, 2025

*John M. Foote* and *Melissa M. Brewer*, Kelley Drye & Warren LLP, of Washington, D.C., for plaintiff Worldwide Door Components, Inc.

*Aimee Lee*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., and *Patricia M. McCarthy*, Director, and *Tara K. Hogan*, Assistant Director, for defendant.  Of counsel are *Nikki Kalbing*, Assistant Chief Counsel, and *JonZachary Forbes*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

*Robert E. DeFrancesco, III*, *Alan H. Price*, *Derick G. Holt*, *Elizabeth S. Lee*, *Enbar Toledano*, and *Adam M. Teslik*, Wiley Rein LLP, of Washington, D.C., for defendant-intervenors Aluminum Extrusions Fair Trade Committee and Endura Products, Inc.

Stanceu, Judge: This litigation concerns certain "door thresholds" that plaintiff Worldwide Door Components, Inc. ("Worldwide") imported from the People's Republic of China ("China," or the "PRC"), each of which contained as a component part an "aluminum extrusion." The issue in this litigation was whether that component part is subject to antidumping ("AD") and countervailing duty ("CVD") orders on certain aluminum extrusions from China (the "Orders").

Before the court is the mandate issued by the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals") in *Worldwide Door Components, Inc. v. United States*, 119 F.4th 959 (Fed. Cir. 2024) ("*Worldwide V*"), ECF No. 118. Mandate in Appeal Nos. 2023-1532, 2023-1534 (Nov. 14, 2024), ECF No. 120. *Worldwide V* vacated this Court's judgment in *Worldwide Door Components, Inc. v. United States*, 46 CIT __, 606 F. Supp. 3d 1363 (2022) ("*Worldwide IV*"), under which the aluminum extrusion component in each door threshold was held to be outside the scope of the Orders, *id.*, 46 CIT at __, 606 F. Supp. 3d at 1364. *Worldwide V*, 119 F.4th at 972. *Worldwide V* reversed this Court's remand order in *Worldwide Door Components, Inc. v. United States*, 45 CIT __, 537 F. Supp. 3d 1403 (2021) ("*Worldwide II*"), and vacated this Court's subsequent opinions in *Worldwide Door Components, Inc. v. United States*, 46 CIT __, 589

F. Supp. 3d 1185 (2022) ("*Worldwide III*") and *Worldwide IV*. *Id.* In *Worldwide V*, the

Court of Appeals directed this Court to "reinstate the non-protested portions" of an

earlier agency decision, the "First Remand Redetermination" of the International Trade

Administration, U.S. Department of Commerce ("Commerce" or the "Department").

*Id.*; *see* Final Results of Redetermination Pursuant to Ct. Remand: Aluminum Extrusions

from the People's Republic of China (Int'l Trade Admin. Dec. 23, 2020), ECF No. 64-1

("*First Remand Redetermination*"). In the non-protested portion of the First Remand

Redetermination, Commerce determined that the aluminum extrusion component in

each of the door thresholds, but not the other components, was within the scope of the

Orders. *First Remand Redetermination* 1–2, 10, 38.

## I. BACKGROUND

Worldwide commenced this action in 2019. Summons (Jan. 18, 2019), ECF No. 1;

Compl. (Feb. 19, 2019), ECF No. 13. The Aluminum Extrusions Fair Trade Committee

(the "petitioner") and Endura Products, Inc. ("Endura") were defendant-intervenors.[1]

Background on this litigation is described in the prior opinions of the court and

the opinion of the Court of Appeals and is summarized and supplemented herein. *See*

*Worldwide Door Components, Inc. v. United States*, 44 CIT __, __, 466 F. Supp. 3d 1370,

---

[1] Endura Products, Inc. withdrew its position as defendant-intervenor on
March 23, 2023. Order (Mar. 23, 2023), ECF No. 116.

1372–73 (2020) ("*Worldwide I*"); *Worldwide II*, 45 CIT at __, 537 F. Supp. 3d at 1405–06;

*Worldwide III*, 46 CIT at __, 589 F. Supp. 3d at 1186–87; *Worldwide IV*, 46 CIT at __, 606

F. Supp. 3d at 1364–65; *Worldwide V*, 119 F.4th at 962–68.

### A.  Issuance of the Orders

Commerce issued the Orders in 2011.  *Aluminum Extrusions from the People's*

*Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Int'l Trade Admin.

May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China:*

*Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade Admin. May 26, 2011) ("*CVD*

*Order*").

### B.  Worldwide's Imported Door Thresholds

At issue are 18 models of door thresholds, each of which is an assembly of

various components and each of which contains a single component fabricated from an

aluminum extrusion.  *Worldwide I*, 44 CIT at __, 466 F. Supp. 3d at 1372–73.  Each of the

models contains various components other than the aluminum component, which are

made of various non-aluminum materials, including polyvinyl chloride ("PVC") and,

variously, plastic polymer, wood, or steel.  *Id.*, 44 CIT at __, 466 F. Supp. 3d at 1373.

### C.  The Contested Scope Ruling

Worldwide brought this action to contest the Department's determination on the

imported door thresholds (the "Scope Ruling"), which Commerce issued in 2018.

*Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's*

*Republic of China: Final Scope Rulings on Worldwide Door Components Inc., MJB Wood*

*Group Inc., and Columbia Aluminum Products Door Thresholds* (Int'l Trade Admin. Dec. 19,

2018), P.R. Doc. 36, ECF No. 53-1 ("*Scope Ruling*").[2]  The Scope Ruling construed the

scope of the Orders to include the aluminum extrusion component of each door

threshold, but not the other components.  *Id.* at 37–38.  Commerce issued the Scope

Ruling in response to a request Worldwide submitted on August 3, 2017.  *Worldwide I*,

44 CIT at __, 466 F. Supp. 3d at 1372–73 (citations omitted).

## II. Discussion

### A. Jurisdiction

The court exercises subject matter jurisdiction under section 201 of the Customs

Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions

brought under section 516A of the Tariff Act of 1930, *as amended* ("Tariff Act"), 19 U.S.C.

§ 1516a.[3]  Among the decisions that may be contested according to section 516A is a

determination of "whether a particular type of merchandise is within the class or kind

---

[2] Documents in the Joint Appendix (Dec. 4, 2019), ECF Nos. 52 (conf.), 53 (public), are cited herein as "P.R. Doc. __."  Citations to Joint Appendix documents are to the public versions.

[3] Citations herein to the United States Code are to the 2018 edition.

of merchandise described in an . . . antidumping or countervailing duty order." *Id*.

§ 1516a(a)(2)(B)(vi).

### B.  Scope Language Identifying "Door Thresholds" and "Parts" of "Door Frames" as Examples of Aluminum Extrusions that Are Within the Scope of the Orders

The Orders, which contain essentially identical scope language, apply generally

to "aluminum extrusions" made from specified aluminum alloys.[4]  *AD Order*, 76 Fed.

Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653–54.  In addition to an aluminum shape

or form that results only from an extrusion process, the Orders also include, with

certain exceptions, any product fabricated from a single aluminum extrusion, regardless

of any drawing, finishing, coating, or fabricating operations, including operations that

result in finished products, such as "fence posts," "electrical conduits," and "door

thresholds,"[5] or in "parts for final finished products that are assembled after

---

[4] The Orders define the term "aluminum extrusions" as "shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents)."  *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650, 30,650 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653, 30,653 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").

[5] "Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks (that do not (continued . . .)

importation," including "door frames."[6]  *AD Order*, 76 Fed. Reg. at 30,650–51; *CVD*

*Order*, 76 Fed. Reg. at 30,654.

The Scope Ruling cited the "door thresholds" exemplar in the scope language in

concluding that Worldwide's products fall within the scope of the Orders.  *Scope*

*Ruling* 34.  *Worldwide I* rejected this approach, pointing out that the door thresholds

exemplar refers to aluminum extrusions that *are* door thresholds, not door thresholds

made from a combination of components, only one of which has been fabricated from

an aluminum extrusion.  *Worldwide I*, 44 CIT at __, 466 F. Supp. 3d at 1375–76.  Similarly,

*Worldwide I* rejected the Department's conclusion that Worldwide's door thresholds

were described by scope language identifying "'[s]ubject aluminum extrusions'" that

"'may be described at the time of importation as parts for final finished products.'"  *Id.*,

44 CIT at __, 466 F. Supp. 3d at 1374–75 (quoting *Scope Ruling* 33, in turn quoting *AD*

*Order*, 76 Fed. Reg. at 30,650–51, *CVD Order*, 76 Fed. Reg. at 30,654).  The *Worldwide I*

---

meet the finished heat sink exclusionary language below).  Such goods are subject
merchandise if they otherwise meet the scope definition, regardless of whether they are
ready for use at the time of importation."  *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*,
76 Fed. Reg. at 30,654.

[6] "Subject aluminum extrusions may be described at the time of importation as
parts for final finished products that are assembled after importation, including, but not
limited to, window frames, door frames, solar panels, curtain walls, or furniture.  Such
parts that otherwise meet the definition of aluminum extrusions are included in the
scope."  *AD Order*, 76 Fed. Reg. at 30,650–51; *CVD Order*, 76 Fed. Reg. at 30,654.

opinion and order noted that "at the time of importation" Worldwide's door thresholds

were not themselves aluminum extrusions but instead were assemblies, each containing

an aluminum extrusion. *Id.*, 44 CIT at __, 466 F. Supp. 3d at 1375.

### C. The "Subassemblies" Provision and the "Finished Merchandise" Exclusion

The Orders also contain a provision described by Commerce as the

"subassemblies" provision. This provision was at issue in the decision of the Court of

Appeals in *Worldwide V*, which affirmed the Department's determination that the

provision described Worldwide's door thresholds. 119 F.4th at 969–72. The

subassemblies provision is as follows:

> The scope includes the aluminum extrusion components that are attached
> (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially
> assembled merchandise unless imported as part of the finished goods 'kit'
> defined further below. The scope does not include the non-aluminum
> extrusion components of subassemblies or subject kits.

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654. Addressing

the subassemblies provision, the Scope Ruling stated as follows:

> Additionally, we find that the door thresholds, which constitute
> aluminum extrusion components attached to non-aluminum extrusion
> components, may also be described as subassemblies pursuant to the
> scope of the *Orders*. Thus, the non-aluminum extrusion components (*i.e.*,
> . . . the synthetic plastic polymers, polyethylene, polyurethane,
> polypropylene or thermoplastic elastomer, wood, and stainless steel in
> Worldwide's door thresholds . . . ), which are assembled with the in-scope

aluminum extrusion components, are not included in the scope of the
*Orders*.

*Scope Ruling* 34.  Commerce considered Worldwide's door thresholds to fall within the

scope language of the Orders that refers to "subassemblies, *i.e., partially assembled*

*merchandise,*" *AD Order*, 76 Fed. Reg. at 30,651 (emphasis added); *CVD Order*, 76 Fed.

Reg. at 30,654 (emphasis added), even though the record evidence established that these

thresholds, in the form in which they were imported as "merchandise," were fully

assembled, *see Scope Ruling* 21; *Worldwide II*, 45 CIT at __, 537 F. Supp. 3d at 1412

(citation omitted).

      The Department's reliance on the subassemblies provision also raised the issue of

whether Worldwide's door thresholds qualified for an exclusion, the "finished

merchandise" exclusion, that the Orders also provided.  This exclusion is as follows:

> The scope also excludes finished merchandise containing aluminum
> extrusions as parts that are fully and permanently assembled and
> completed at the time of entry, such as finished windows with glass,
> doors with glass or vinyl, picture frames with glass pane and backing
> material, and solar panels.

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  Commerce

concluded in the Scope Ruling that the finished merchandise exclusion did not apply,

relying, erroneously, on the "'express inclusion of "door thresholds" within the scope of

the *Orders*.'"  *Worldwide I*, 44 CIT at __, 466 F. Supp. 3d at 1376–77 (quoting *Scope*

*Ruling* 35–36).  *Worldwide I* directed Commerce to "give full and fair consideration to the

issue of whether this exclusion applies, upon making findings that are supported by

substantial record evidence." *Id.*, 44 CIT at __, 466 F. Supp. 3d at 1380.

In the First Remand Redetermination it submitted, under protest, in response to

*Worldwide I*, Commerce again concluded that the finished merchandise exclusion did

not apply, but it did so under different reasoning. First, it concluded that the finished

merchandise exclusion was irrelevant to its analysis, relying in part on *Shenyang Yuanda*

*Aluminum Indus. Eng'g Co., Ltd. v. United States*, 776 F.3d 1351, 1358 (Fed. Cir. 2015)

("*Shenyang Yuanda I*"), which rejected the claim that certain curtain wall units were

excluded from the Orders as "finished merchandise."[7] *First Remand Redetermination* 24.

As interpreted by Commerce, *Shenyang Yuanda I* held that the units were not finished

merchandise because they "were subassemblies meant to be fastened together to form a

completed curtain wall." *Id.* (citing *Shenyang Yuanda I*, 776 F.3d at 1358).[8]

---

[7] This Court distinguished the issue presented by this case from that adjudicated
by the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals") in *Shenyang*
*Yuanda Aluminum Indus. Eng'g Co., Ltd. v. United States*, 776 F.3d 1351 (Fed. Cir. 2015)
("*Shenyang Yuanda I*"), which "considered the curtain wall unit to be a 'subassembly'
within the meaning of the scope language" and "which the Court of Appeals indicated
was not 'merchandise'" because, as the Court of Appeals noted, an individual curtain
wall unit is never purchased for consumption. *Worldwide Door Components, Inc. v.*
*United States*, 44 CIT __, __, 466 F. Supp. 3d 1370, 1377 n.4 (2020).

[8] In *Shenyang Yuanda Aluminum Indus. Eng'g Co., Ltd. v. United States*, 918 F.3d
1355, 1367–68 (Fed. Cir. 2019) ("*Shenyang Yuanda II*"), the Court of Appeals held that
(continued . . .)

In the First Remand Redetermination, Commerce also cited a second

redetermination it issued on remand subsequent to the decision of the Court of Appeals

in *Meridian Prods., LLC v. United States*, 890 F.3d 1272 (Fed. Cir. 2018) ("*Meridian*").  *Id.*

at 24–25.  There, the Court of Appeals ordered this Court to direct Commerce to

determine whether certain kitchen appliance door handles were "imported fully and

permanently assembled," and, if so, whether they were excluded under the finished

merchandise exclusion.  *Meridian*, 890 F.3d at 1281–82.  In its remand redetermination

subsequent to the decision of the Court of Appeals, Commerce found that even though

the "handles require no further fabrication or assembly," they were "'subassemblies'

that were intended to 'become part of a larger whole' and that therefore, they were not

finished merchandise containing extrusions."  *First Remand Redetermination* 24–25

(quoting Final Results of Second Redetermination Pursuant to Ct. Remand 31, *Meridian*

*Prods. LLC v. United States*, Ct. No. 1:13-cv-00246-TCS (Ct. Int'l Trade May 15, 2019), ECF

No. 88-1 ("*Meridian Second Remand Redetermination*")); *Meridian Second Remand*

*Redetermination* 30.  Commerce drew the following conclusion:

---

curtain wall units were not eligible for exclusion from the Orders under the finished
goods kit exclusion, which applies to "a packaged combination of parts that contains, at
the time of importation, all of the necessary parts to fully assemble a final finished good
and requires no further finishing or fabrication, such as cutting or punching, and is
assembled 'as is' into a finished product."  *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*,
76 Fed. Reg. at 30,654.

> Consistent with *Shenyang Yuanda [I]* and the analysis provided in the
> Meridian Door Handles Second Remand Redetermination, we find
> whether the door thresholds are inherently part of a larger whole is
> relevant in determining if the thresholds are either excluded finished
> goods or included subassemblies.

*First Remand Redetermination* 25.  As further support for its reasoning, Commerce quoted

*Whirlpool Corp. v. United States*, 890 F.3d 1302 (Fed. Cir. 2018) ("*Whirlpool*"), which

concluded that "'[t]he general scope language unambiguously includes aluminum

extrusions that are part of an assembly.'"[9]  *Id.* at 30 (quoting *Whirlpool*, 890 F.3d at 1309).

Likening Worldwide's door thresholds to the products in *Shenyang Yuanda I* and in

*Meridian*, Commerce concluded that the finished merchandise exclusion did not apply.

*Id.* at 25.  According to Commerce, the door thresholds "are designed to be attached

with other components after importation to produce the completed downstream

product" and therefore "are not themselves finished merchandise which perform a

function independent of the larger downstream product."  *Id.*

---

[9] As it did in *Meridian Prods., LLC v. United States*, 890 F.3d 1272, 1281–82 (Fed.
Cir. 2018), the Court of Appeals directed that Commerce determine whether certain
appliance door handles, which in that case were recognized as having been imported in
assembled form, qualified for the finished merchandise exclusion.  *See Whirlpool Corp. v.
United States*, 890 F.3d 1302, 1312 (Fed. Cir. 2018) ("Finally, the case is remanded to the
CIT for further proceedings, in keeping with this opinion, to determine whether
Whirlpool's assembled handles meet the requirements for the finished merchandise
exclusion.").

In the First Remand Redetermination, Commerce also relied on a finding or

inference pertaining to language in the finished merchandise exclusion.  On the factual

issue of whether Worldwide's door thresholds are "fully and permanently assembled

and *completed*," as required by the finished merchandise exclusion—*see AD Order*,

76 Fed. Reg. at 30,651 (emphasis added); *CVD Order*, 76 Fed. Reg. at 30,654 (emphasis

added)—Commerce stated that "'the record evidence submitted by the petitioner and

Endura indicates that the completed door unit is highly customizable, and may require

additional cutting and machining of the door threshold.'"  *Worldwide II*, 45 CIT at __,

537 F. Supp. 3d at 1412 (quoting *First Remand Redetermination* 36).

In *Worldwide II*, this Court noted that the evidence submitted by defendant-

intervenors spoke of assembled door thresholds in general rather than describing

Worldwide's door thresholds.  *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1413 ("Defendant-

intervenors' comments, and the evidence they cite, are not directed to the specific issue

the court identifies, which is whether *Worldwide's* imported thresholds, as identified in

the Scope Ruling Request, are so designed and manufactured as to require cutting or

machining prior to use as a component in a door unit or other structure.").  This Court

directed Commerce to address the issue of whether "the door thresholds at issue in this

case either are, or are not, so designed and produced as to require cutting or machining

prior to use."  *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1414.  *Worldwide II* directed, further,

that after reaching a finding on that issue, "Commerce must consider that finding in

deciding anew whether the finished merchandise exclusion applies to the specific door

thresholds at issue in this litigation." *Id.*

 This Court also directed in *Worldwide II* that Commerce reconsider the

applicability of the finished merchandise exclusion based on certain "exemplars" stated

therein.  *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1413–14; *see AD Order*, 76 Fed. Reg.

at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654 (listing as exemplars "finished windows

with glass, doors with glass or vinyl, picture frames with glass pane and backing

material, and solar panels").  As recounted in *Worldwide II*, "Commerce considered

Worldwide's door thresholds to be 'subassemblies' because they 'do not function on

their own, but rather are incorporated into a larger downstream product.'"  45 CIT at

__, 537 F. Supp. 3d at 1413 (quoting *First Remand Redetermination* 23).  *Worldwide II*

identified the contradiction in this reasoning: "Two of the exemplars—the

aforementioned door exemplar and the 'finished windows with glass' exemplar—*are*

specifically designed for the sole purpose of becoming part of a larger whole."  *Id.*,

45 CIT at __, 537 F. Supp. 3d at 1414.  With particular respect to the "doors with glass or

vinyl" exemplar, the court also observed that in the First Remand Redetermination

"Commerce described that product as 'an entire door unit' and as 'a completed door

unit' that 'requires additional parts, such as door jambs, a door panel, glass, hinges,

weatherstripping, and other hardware parts.'" *Id.*, 45 CIT at __, 537 F. Supp. 3d

at 1413–14 (quoting *First Remand Redetermination* 36). The court stated that "[t]o

interpret the words 'doors with glass or vinyl' to refer only to complete, assembled door

units, i.e., those complete with doors, door frames, hinges, weatherstripping, and all

other necessary hardware and fittings, as Commerce apparently did, is to adopt an

interpretation that is contrary to the plain meaning of the door exemplar as it appears in

the scope language." *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1414.

        In response to *Worldwide II*, Commerce issued the "Second Remand

Redetermination," in which it concluded, under protest, that Worldwide's door

thresholds were excluded in the entirety from the Orders as finished merchandise.

*Final Results of Redetermination Pursuant to Ct. Remand* 2, 16 (Int'l Trade Admin.

Dec. 13, 2021), ECF No. 85-1. Because the Second Remand Redetermination was not a

decision in a form the court could sustain, the court directed "Commerce to issue a third

remand redetermination" that is "in a form that would go into effect if sustained upon

judicial review." *Worldwide III*, 46 CIT at __, 589 F. Supp. 3d at 1193, 1195.

        In the "Third Remand Redetermination," Commerce stated, under protest, that

Worldwide's door thresholds were excluded from the scope of the Orders in the

entirety "based on the finished merchandise exclusion." *Final Results of

Redetermination Pursuant to Ct. Remand* 3 (Int'l Trade Admin. Sept. 9, 2022), ECF

No. 101-1.  Concluding that "[t]he essential agency findings supporting" the

Department's decision "are supported by substantial evidence on the record of this

case," the court sustained this decision.  *Worldwide IV*, 46 CIT at __, 606 F. Supp. 3d

at 1369–70.

### D.  The Decision of the Court of Appeals in *Worldwide V*

In the proceedings before the Court of Appeals, the parties "present[ed]

argument with respect to all three bases that the agency considered in the [Scope

Ruling], namely, whether Appellees' door thresholds can be considered subject

merchandise as (1) 'parts for final finished products,' (2) products 'identified with

reference to their end use,' or (3) 'subassemblies.'"  *Worldwide V*, 119 F.4th at 968.  The

Court of Appeals addressed the subassemblies provision and did not reach the other

two bases the parties addressed.  *Id.*, 119 F.4th at 968, 972.

In addressing the subassemblies provision, the Court of Appeals made three

rulings.  First, it ruled that the Department's determination in the Scope Ruling that

Worldwide's door thresholds are subassemblies was not supported by substantial

evidence.  *Id.*, 119 F.4th at 969.  It explained that Commerce did not provide a sufficient

explanation for its conclusion, i.e., "at least some citation and analysis of the record

evidence."  *Id.*  Second, it ruled that the Department's subassemblies finding in the First

Remand Redetermination was supported by substantial evidence, *id.*, 119 F.4th at 971,

which cured "any defect in the agency's subassemblies analysis" in the Scope Ruling,

*id.*, 119 F.4th at 969.  Finally, the Court of Appeals ruled that "it was error for the trial

court to remand the case back to the agency for failure to consider the finished

merchandise exception in light of its subassembly finding," "[b]ecause subassemblies

and finished merchandise are mutually exclusive categories for the purpose of the

Orders."  *Id.*, 119 F.4th at 972.  In so concluding, the Court of Appeals applied its

decision in *China Custom Mfg. Inc. v. United States*, 61 F.4th 956, 960 (Fed. Cir. 2023),

issued after *Worldwide IV* was decided.  *Id.* (citing also *Shenyang Yuanda I*, 776 F.3d

at 1358).  The Court of Appeals sustained, as supported by substantial evidence, the

Department's determination that Worldwide's door thresholds were, in the words of

the subassemblies provision, "partially assembled merchandise," which Commerce

reached on the basis of the uncontested fact that the door thresholds, although fully

assembled at the time of importation, were intended to "become part of a larger whole"

after importation.  *Id.*, 119 F.4th at 969–72; *First Remand Redetermination* 24–25.

### E.  Future Cases

        The subassemblies provision has generated problems of interpretation, not only

for the courts but also for Commerce.  The problems stem in part from the Department's

current position, now affirmed by the Court of Appeals in *China Custom Mfg.* and

*Worldwide V*, that an imported good containing an "aluminum extrusion" (as defined in

the Orders) does not qualify for the finished merchandise exclusion if it is a

"subassembly," a scope term Commerce now considers to include, broadly, any good

that is designed to be incorporated into a larger downstream product after importation.

In *Worldwide V*, the Court of Appeals alluded to one of the issues posed by the

Department's broad interpretation of the term "subassemblies" by referencing the

exemplars for finished windows with glass and doors with glass or vinyl that are

contained within the finished merchandise exclusion.  119 F.4th at 971–72.  As discussed

*supra*, *Worldwide II* identified as a contradiction in the Department's reasoning that these

exemplars describe products specifically designed for the purpose of becoming part of a

larger whole, and thus would be considered "subassemblies" under the Department's

analysis, yet are expressly excluded by unambiguous scope language.  *Worldwide II*,

45 CIT at __, 537 F. Supp. 3d at 1414.  In *Worldwide V*, the Court of Appeals recounted

that this Court sought "'a plausible explanation of why the articles mentioned in the

"door" and "window" exemplars of the finished merchandise exclusion satisfy that

exclusion but that [Worldwide's] door thresholds, as described in the Scope Ruling

Request, do not.'"  119 F.4th at 971–72 (citations omitted).  Although it interpreted the

language of the Orders to mean that a product described as a "subassembly" "'cannot

qualify for the finished merchandise exclusion,'" *id.*, 119 F.4th at 972 (quoting *China*

*Custom Mfg.*, 61 F.4th at 960), the Court of Appeals acknowledged this Court's

"concern" arising from the exclusion from the scope of the products identified in the

door and window exemplars, *id.* ("We acknowledge the trial court's concern with line-

drawing in the context of these Orders and agree that a discussion distinguishing the

categories could have been a helpful addition to the agency's decision.").  The Court of

Appeals concluded, nevertheless, that "such an omission does not constitute reversible

error," reasoning that the issue presented "'a question of fact reviewed for substantial

evidence.'"  *Id*. (quoting *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1382 (Fed.

Cir. 2017)).  In so ruling, the Court of Appeals applied *China Custom Mfg.* as a precedent

sustaining the Department's interpretation that the "subassemblies" provision and the

finished merchandise exclusion are "mutually exclusive."  *Id*.

     A second problem is that the Department's current, broad interpretation of the

subassemblies provision can lead to unreasonable, and even absurd, results.  That

Commerce has been aware of this problem since at least 2012 is demonstrated by the

Department's scope ruling on a "side mount valve control," or "SMVC."  *See*

*Antidumping Duty (AD) and Countervailing Duty (CVD) Orders: Aluminum Extrusions from*

*the People's Republic of China (PRC): Final Scope Ruling on Side Mount Valve Controls*, Case

Nos. C-570-968, Barcode No. 3103459-01; A-570-967, Barcode No. 3103461-01 (Int'l Trade

Admin. Oct. 26, 2012), access.trade.gov.  This "SMVC Scope Ruling" adopted

unchanged the preliminary decision Commerce reached in that scope proceeding.  *Id.*

at 1–2; *Antidumping Duty (AD) and Countervailing Duty (CVD) Orders: Aluminum*

*Extrusions from the People's Republic of China (PRC): Initiation and Preliminary Scope Ruling*

*on Side Mount Valve Controls*, Case Nos. C-570-968, Barcode No. 3098425-01; A-570-967,

Barcode No. 3098426-01 (Int'l Trade Admin. Sept. 24, 2012), access.trade.gov ("*SMVC*

*Prelim. Scope Ruling*").

        The imported product at issue in the SMVC Scope Ruling was a collection of

components in unassembled "kit" form, which contained all the parts necessary to

assemble a complete side mount valve control. *SMVC Prelim. Scope Ruling* 2, 7.

Commerce described the SMVC as a product that "manually controls water or foam

pressure and flow in firefighting equipment, specifically from hoses or their pumper

discharges, such as deck guns and monitors." *Id*. at 2. The kit contained some

components that were not aluminum extrusions. *See id*. Commerce explained that

"[a]fter importation, the SMVC is assembled and installed on to a fire truck" and that

"[o]nce installed, the SMVC controls the line pressure and subsequent stream distance

of the hose discharge." *Id*. Addressing both the finished merchandise exclusion and the

finished goods kit exclusion in the scope language of the Orders, Commerce stated its

position as follows:

> **Department's Position:** In prior scope rulings, the Department found that
> merchandise could not be considered a "finished good" or "finished
> goods kit" if it was designed to work with other parts to form a larger
> structure or system. . . . However, upon further reflection of the language

in the scope of the <u>Orders</u> and for purposes of this preliminary scope
ruling, the Department is revising the manner in which it determines
whether a given product is a "finished good" or "finished goods kit." The
Department has identified a concern with this analysis, namely that it may
lead to unreasonable results. An interpretation of "finished goods kit"
which requires all parts to assemble the ultimate downstream product
may lead to absurd results, particularly where the ultimate downstream
product is, for example, a fire truck. This interpretation may expand the
scope of the <u>Orders</u>, which are intended to cover aluminum extrusions.

*Id*. at 6–7 (footnotes omitted). Referring to the kit exclusion and alluding to the

exemplars in the finished merchandise exclusion, Commerce ruled that the SMVC is a

"subassembly" that qualified for the finished goods kit exclusion, reasoning that "[t]his

is consistent with scope language that excludes merchandise like windows with glass or

doors with glass or vinyl, each of which includes all of the parts necessary to assemble a

complete window or door, but are necessarily assembled into a larger structure, such as

a house." *Id*. at 7–8.

Commerce reversed the position taken in the SMVC Scope Ruling subsequent to

the decision of the Court of Appeals in *Shenyang Yuanda I*. Consequently, the problem

persists that the Department's current interpretation of the subassemblies provision can

lead to "unreasonable" and "absurd" results. A seemingly infinite variety of imported,

assembled products may contain an "aluminum extrusion" component yet be designed

to be incorporated into a larger downstream product after importation. It is not

reasonable to expect that every such aluminum extrusion component would have been

sold separately to the importer, who even may be unaware of the presence of the

component.  In this respect, not only can the current Department interpretation lead to

results that, in the Department's own characterizations, are "unreasonable" or

"absurd," but it also can generate circumstances incapable of administration from a

customs standpoint.[10]

  In future cases, the solution to the various problems of interpretation posed by

the subassemblies provision, as currently applied by Commerce, may lie in provisions

of the Tariff Act itself, in particular sections 731 and 701(a), 19 U.S.C. §§ 1673, 1671(a).

Section 731 of the Tariff Act imposes, upon certain defined prerequisites, "an

antidumping duty" upon "a class or kind of foreign merchandise" that "is being, or is

likely to be, *sold in the United States* at less than its fair value."  19 U.S.C. § 1673

(emphasis added).  Similarly, section 701(a) of the Tariff Act imposes, upon certain

defined prerequisites, "a countervailing duty . . . equal to the amount of the net

countervailable subsidy" upon "a class or kind of merchandise *imported*, or *sold* (or *likely*

*to be sold*) for *importation*, *into the United States*."  *Id.* § 1671(a) (emphasis added).  The

_____

  [10] Like the antidumping and countervailing duty provisions of the Tariff Act of
1930, *as amended* ("Tariff Act"), the appraisement provisions of section 402 of the Tariff
Act are, as a general matter, structured for the assessment of duties on the imported
merchandise itself, and typically on the imported merchandise that is sold for export to
the United States, and not on a single upstream component or substance used in
producing that imported merchandise.  *See* 19 U.S.C. § 1401a(a).

"class or kind of merchandise" sold or offered for sale in the United States is that which

Commerce must define and address in an AD or CVD order. *See id.* §§ 1673, 1673e(a)

(together providing for issuance of an order assessing an antidumping duty equal to the

amount by which normal value exceeds the export price or constructed export price of

the merchandise sold or offered for sale in the United States); 1671(a), 1671e(a) (together

providing for issuance of an order assessing a countervailing duty equal to the amount

of the subsidy provided with respect to the manufacture, production, or export of the

class or kind of merchandise imported, sold, or likely to be sold for importation into the

United States).  Thus, both the antidumping and the countervailing duty provisions of

the Tariff Act are directed to "merchandise" that is considered to be unfairly traded, as

a result of dumping or a countervailable subsidy, upon being sold, or offered for sale,

for importation into the United States.[11]  In this respect, antidumping and

countervailing duties are considered "remedial," i.e., they are directed to remedying the

unfair prices at which the imported merchandise is sold or offered for sale in the United

States, if found to pose injury or threat to a domestic industry.

---

[11] Referring to the "merchandise" that is found to be unfairly sold or offered for sale in the U.S. market due to dumping or a subsidy, the statute defines the role of the U.S. International Trade Commission as determining whether "imports of *that merchandise* or . . . sales (or the likelihood of sales) of *that merchandise*" cause injury or threat of injury to a domestic industry, or material retardation of establishment of a domestic industry.  19 U.S.C. §§ 1671(a) (emphasis added), 1673 (emphasis added).

In contrast, the Department's current interpretation of the Orders can result in the assessment of antidumping and countervailing duties on products that are not sold or offered for sale in the United States but instead are upstream components in the merchandise that actually is imported and sold.[12]  The court is unaware of Tariff Act provisions that expressly authorize Commerce to structure or apply an antidumping or countervailing duty order in this way.  *See The Mosaic Co. v. United States*, 47 CIT __, __, 659 F. Supp. 3d 1285, 1294–95 (2023).

In this case, the Department's interpretation of the subassemblies provision, as applied to Worldwide's door thresholds, will result in the assessment of antidumping and countervailing duties on an upstream, incorporated component (i.e., the aluminum extrusion component) of the merchandise that was imported and sold (i.e., the complete, assembled door threshold, which is not an "aluminum extrusion" as defined in the Orders).  Nevertheless, Worldwide did not claim that the interpretation of the subassemblies provision Commerce applied to its fully assembled door thresholds contravened the plain meaning and purpose of basic Tariff Act provisions governing the assessment of antidumping and countervailing duties.  As a result, the issue the court has identified relating to these basic statutory provisions was not before it (and,

---

[12] The Tariff Act contains a provision for assessment of a countervailing duty on an "upstream subsidy," but it applies only in circumstances not relevant here.  *See* 19 U.S.C. § 1677-1.

therefore, was not before the Court of Appeals) in this litigation. Future cases could

provide clarity on the issue of whether the Tariff Act, and specifically sections 731 and

701(a) thereof, allows Commerce routinely to order the assessment of these remedial

duties on upstream materials and components used in the production of the

merchandise that is sold or offered for sale in the United States. Such clarity may be

needed, in particular, in light of the significant problems of interpretation presented by

the Department's current interpretation of the Orders and the limiting principle that

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391–92, 394–96, 412–13 (2024), applies to

an agency's interpretation of a statute it is charged to administer.

### III. CONCLUSION

For the present, it remains for this Court to enter a judgment that effectuates the

decision of the Court of Appeals in *Worldwide V* and governs the liquidation of the

entries at issue in this case.[13]

*Worldwide V* directed this Court to "reinstate the non-protested portions of the

agency's *First Remand Redetermination*." 119 F.4th at 972. The non-protested portions of

the agency's decision provided for the aluminum extrusion component within each of

---

[13] Commerce recently issued liquidation instructions to U.S. Customs and Border
Protection. *Liquidation instructions for aluminum extrusions from the People's Republic of
China: Worldwide Door Components, Inc.*, Case Nos. C-570-968, Barcode No. 4755620-01;
A-570-967, Barcode No. 4755605-01 (Int'l Trade Admin. Apr. 30, 2025), access.trade.gov.

**Court No. 19-00012**                                                    **Page 26**

Worldwide's imported door thresholds, but not the other components, to be subject to

antidumping and countervailing duties, while the protested portion consisted of the

directive in *Worldwide I* to consider whether the finished merchandise exclusion applied

to these products.  The court will enter a judgment accordingly.

        /s/ Timothy C. Stanceu           

Timothy C. Stanceu, Judge

Dated: June 25, 2025
      New York, New York